IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMED AL-ZARNOUQI, *et al.*, <br> *Petitioners* <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br> *Respondents.* | Civil Action No. 06-cv-01767-RMU <br><br> [ORAL ARGUMENT REQUESTED] |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS' MOTION FOR AN ORDER REQUIRING RESPONDENTS TO PRODUCE PETITIONERS' FACTUAL RETURNS

Petitioners Mohamed Al-Zarnouqi and Mashour Abdullah Muqbel Alsabri (hereinafter referred to collectively as "Petitioners"), together with Next Friend Mohamed Muqbel Ahmed Alsabri as Co-Petitioner, by and through undersigned counsel, respectfully submit this memorandum in support of Petitioners' motion for production of their factual returns within twenty (20) days.[1]

Requiring Respondents to produce factual returns will not impose any significant burden on Respondents, but will provide much needed factual information to assist counsel in providing Petitioners with meaningful representation.

---

[1] Pursuant to Local Civil Rule 7(m), the undersigned counsel conferred with Respondents' counsel regarding production of Petitioners' factual returns and Respondents' counsel indicated that they would not consent to produce them.

At least nine judges of this Court have rejected the notion that requiring factual returns imposes an undue burden upon the government. *See Al-Mohammed v. Bush*, 05-CV-0247 (HHK) (D.D.C. Apr. 30, 2005) (dkt no. 18) (Ex. A); *Hatim v. Bush*, 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (dkt no. 16) (Ex. B); *Kurnaz v. Bush*, 04-CV-1135 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005) (Ex. C); *Al-Adahi v. Bush*, 05-CV-0280 (GK) (D.D.C. Apr. 29, 2005) (dkt no. 35) (Ex. D); *Al-Anazi v. Bush*, 05-CV-00345 (JDB) (D.D.C. Apr. 21, 2005) (dkt no. 22) (Ex. E); *Al-Shamri v. Bush*, 05-CV-0551 (RWR) (D.D.C. May 10, 2005) (dkt no. 10) (Ex. F); *Razakah v. Bush*, 05-CV-2370 (EGS) (D.D.C. Aug. 6, 2006) (dkt no. 52) (Ex. L); *see also* Judge Green's decision in *In re Guantánamo Detainee Cases*, 355 F. Supp. 2d at 451, and Judge Robertson's comments *infra* at 4. As these courts recognize, Petitioners need the factual returns in order to prepare an effective defense. *But see, e.g., Al Subaie v. Bush*, 05-CV-02216 (RCL) (D.D.C. Sep. 28, 2006) (dkt no. 42).

When considering the issue of production of factual returns, this Court has generally rejected the notion that the government will be unduly burdened. The following is a brief sampling of what some of the judges have ruled in similar cases:

- "Respondents' position with respect to the release of factual returns must be rejected. With respect to the necessity for the returns, petitioners' counsel must have access to them in order to develop a meaningful understanding of the 'basic factual allegations that underlie Mr. Al-Mohammed's detention'. . . and prepare for consultation with their clients. As for Respondents' contention that the submission of the factual returns 'would impose significant burdens and potential risks on the government,' the entry of the protective order should allay Respondents' fears of inadvertent disclosure of classified or otherwise protected information. Meanwhile, Respondents' assertion that they 'face an immense logistical burden to process and file the returns'. . . is entirely unconvincing in light of the government's demonstrated capabilities in managing the numerous

factual returns that it has already submitted for other petitioner-detainees." (*Al-Mohammed v. Bush*, 05-CV-0247 (HHK) (D.D.C. Apr. 30, 2005) (dkt no. 18) (Ex. A), slip op. at 2-3)

- To avoid being prejudiced by a stay, habeas counsel must "begin preparing their defense well in advance of any ruling by the Court of Appeals." (*Al-Adahi v. Bush*, 05-CV-0280 (GK) (D.D.C. Apr. 29, 2005) (dkt no. 35) (Ex. D), slip op. at 2 n.1)

- "[T]he factual returns appear necessary for petitioners' counsel effectively to represent petitioners. Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." (*Al-Anazi v. Bush*, 05-CV-0345 (JDB) (D.D.C. Apr. 21, 2005) (dkt no. 21) (Ex. E), slip op. at 20)

Failing to require Respondents to produce the factual returns would emasculate the Supreme Court's holding in *Rasul v. Bush*, 542 U.S. 466 (2004), recognizing the detainees' habeas rights, and the District Court's subsequent holding in *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004) that the detainees have a right to be represented by counsel that cannot be impermissibly burdened. Without knowledge of the factual details surrounding Petitioners' detention, it will be all but impossible for counsel to investigate and attempt to rebut Respondents' allegations.

Finally, the fact that the D.C. Circuit has not yet ruled upon the issue of whether federal courts have jurisdiction over Guantánamo detainees' habeas petitions does not preclude the Court from entering this order. As this Court noted in its Memorandum Order granting Petitioners' motion for entry of a protective order (dkt no. 15) (Ex. K), and as other judges of this Court have held on this precise issue, *see infra*, Petitioners should not be deprived of their right to prepare their cases, irrespective of any unsettled jurisdictional questions.

## ARGUMENT

I. **THERE ARE COMPELLING REASONS WHY PETITIONERS' FACTUAL RETURNS SHOULD BE PROMPTLY PRODUCED.**

Factual investigation of this case by Petitioners' counsel needs to begin forthwith. To date, the government has only released a bare minimum of information regarding the allegations against Petitioners, who have been detained for nearly five years without being charged. Timely production of factual returns is essential for a wide range of reasons -- *e.g.*, to determine whether Petitioners are properly designated as "enemy combatants," to investigate and potentially rebut the Respondents' allegations, to facilitate the formation of attorney-client relationships, to assist in preparing for client meetings, to ensure that Petitioners are represented effectively, and to prevent the loss of evidence.

Judge Robertson was flabbergasted to learn that the petitioners in *Qassim v. Bush*, 05-CV-0497 (JR) had been found by the CSRT to be noncombatants months earlier *but that neither petitioners' counsel nor the Court had been so advised*, despite petitioners' request for factual returns. (Ex. G at 2-3, 5). That startling revelation led Judge Robertson to conclude as follows:

> I'll tell you one thing, Counsel. You've talked me early on into not requiring returns to be filed in the cases. But I'm going to go back to all of my habeas cases this afternoon and change those orders. Because if you're telling me that it's only an order to file a return that will allow you to tell opposing counsel that their clients are no longer enemy combatants, that's a little hard for me to understand.

(*Id.* at 21).

Factual returns are also necessary to establish the attorney-client relationship. The government's actions in these cases present unique and substantial barriers to the normal formation of an attorney-client relationship. Respondents have taken custody of Petitioners and transported them to a distant land, then kept them in near complete isolation from the outside

world for a period of years. During their years of confinement, Petitioners likely have been subjected to harsh interrogation tactics and various forms of severe treatment that have inflicted substantial psychological stress. They may have been interrogated by government officials posing as habeas counsel (or heard of this tactic being used on other detainees). Petitioners now find themselves as participants in a legal system that is completely foreign to them, and are faced with the decision of whether to entrust their claims to the care of lawyers whom they do not know, who likely do not speak their language or share their cultural background or religious beliefs, and who may from Petitioners' perspective represent the very establishment that has mistreated them. All of these considerations seriously undermine Petitioners' ability to make an informed and rational decision concerning whether they should authorize continued representation by habeas counsel. Denying habeas counsel factual returns makes an already difficult situation even worse.

Without factual returns, counsel is placed in the untenable position of trying to build up Petitioners' cases with minimal information concerning the government's allegations. Counsel's efforts to gain Petitioners' trust and to develop their cases will necessarily be hobbled, as other judges have recognized. *See, e.g., Tumani v. Bush*, 05-CV-0526 (RMU) (D.D.C. Apr. 19, 2005) (dkt no. 6) (Ex. H), slip op. at 2 ("petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients"). The alternative that might be appropriate in other circumstances -- *i.e.*, questioning the client to obtain background information that could give some hint of the basis (if any) for the government's case -- is unacceptable here because the client would likely perceive this as an interrogation having much in common with the extensive questioning he has almost certainly been subjected to from government agents during his years of confinement.

Habeas counsel cannot effectively represent their clients simply by visiting Petitioners at Guantánamo without the information contained in their factual returns. Counsel need to know *Respondents'* statement of the accusations against Petitioners, not Petitioners' recollection or understanding of those accusations. Moreover, counsel need to know the evidence on which Respondents rest their accusations, which Respondents have not shared with Petitioners. Further, as Petitioners vehemently deny the veracity of the allegations against them, only more detailed information will provide counsel with the ability to perform meaningful factual investigation.

Expedient relief is necessary because memories fade; witnesses move, die, or change locations; and documentary evidence disappears. As time passes, Petitioners face increasing prejudice by their counsel's inability to interview them in a focused and informed manner. Although the court has stayed the case, this does not mean that investigative measures should be curtailed in the interim. Indeed, timely production of factual returns remains critical "to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal." *Kurnaz v. Bush*, 04-CV-1135 (ESH), 2005 WL 83954 at *1 (D.D.C. Apr. 12, 2005) (Ex. C).

## II.   ARGUMENTS AGAINST PROVIDING FACTUAL RETURNS ARE WEAK AND UNPERSUASIVE.

In anticipation of likely objections by Respondents, all of which have been raised against similar motions in other cases, Petitioners set forth various reasons why such objections are meritless and pale in comparison to habeas counsels' right, and urgent need, to know the nature of the allegations against their clients.

First, Respondents often argue that the provision of factual returns would involve the unnecessary expenditure of judicial resources. But the provision of factual returns does not involve the Court at all -- the documents are provided directly to Petitioners' counsel.

Second, Respondents may claim that because the Court has issued a stay, requiring production of factual returns would be an unnecessary burden. However, this is unpersuasive because factual investigation and the development of Petitioners' case should not be unduly hindered notwithstanding a stay in the proceedings. Given the conditions of incarceration at Guantánamo and the lengthy, potentially indefinite, duration of detention faced by Petitioners, it is difficult to conceive how the interests of justice would be served by denying Petitioners access to information central to determination of their guilt or innocence during the pendency of the stay. Such a delay would deprive Petitioners of valuable time to formulate their cases when the stay is lifted, and may lead to the loss of crucial evidence and opportunities for investigation.

Respondents also have complained that providing Petitioners' factual returns would confront them with a large logistical burden. But Respondents have already provided factual returns in scores of other Guantánamo habeas cases. Most of the judges of this Court have rejected Respondents' claim of burden. *See discussion supra*. Furthermore, any "burden" to Respondents cannot outweigh Petitioners' interest in ensuring the investigation and preparation of their cases before the trail -- cool as it might be now -- becomes completely cold, and in being able to proceed without delay if their cases are allowed to continue.

Respondents' asserted "burden," moreover, is vastly overblown. The factual return is simply the record of proceedings before the CSRT. That record already exists. Classification decisions regarding the information in the record of those proceedings were made *before* the proceedings began, and the entirety of the proceedings underwent legal review upon their

completion. *See, e.g.,* Mem. From Bree A. Ermintrout to Director, CSRT, Jan. 18, 2005, in Factual Return for Petitioner Abdulsalam Ali Abdulrahman Al-Hela, *Al-Hela v. Bush*, 05-CV-01048 (RMU) (D.D.C. June 15, 2005) (Ex. I). Pursuant to Respondents' own policies, the factual returns were required to be compiled within three days of the decision of the CSRT's regarding Petitioners, and all such decisions were to be completed by March 2005. Memorandum re: Order Establishing Combatant Status Review Tribunal (July 7, 2004), *available at http://www.defenselink.mil/news/Jul2004/d20040707review.pdf; see also* Update to Annex One of the Second Periodic Report of the United States of America to the Committee Against Torture (October 21, 2005) ("As of March 29, 2005, the CSRT Director had taken final action in all 558 cases."), *available at http://www.state.gov/g/drl/rls/55712.htm*. There is very little, if any, need for Respondents to actually draft any extensive document. Moreover, it is ludicrous for the government to argue that it is unduly burdensome to produce factual returns *to Petitioners' counsel,* when the government has produced redacted copies of similar documents *to the Associated Press. See Associated Press v. United States Department of Defense*, 05 Civ. 3941 (JSR) (S.D.N.Y. Jan. 4, 2006) (Ex. J) (in response to suit by the Associated Press, government produced redacted copies of CSRT transcripts and related documents).

Respondents may claim further that the returns would be useless to Petitioners' counsel because counsel could not share with Petitioners the classified information in their returns. Although counsel for Petitioners are indeed required to withhold classified information from their clients, counsel must obtain such information in order to focus the investigation and preparation of their clients' cases and to seek from them and others facts pertinent to their "enemy combatant" designation.

Respondents may also speculate that providing the returns in this case would increase the risk of inadvertent disclosure -- or other compromise -- of classified information. This speculation lacks basis. Only counsel who have been granted security clearances and submitted themselves to a stringent Protective Order may see the classified information in the returns. As noted in *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004): "The Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance."

Lastly, this Court is not constrained from entering an order by the unsettled issue of whether the Military Commissions Act permissibly strips district courts of jurisdiction in detainee habeas cases. As the Court noted in its Memorandum Order granting Petitioners' motion for entry of a protective order, (dkt. 15) (Ex. K), jurisdictional ambiguity is not a proper basis for thwarting Petitioners' right to develop their cases. Similarly, judges in a number of other habeas cases have recognized that counsel for detainees should not be denied access to their clients' factual returns, and thereby their ability to advocate for their clients effectively, by virtue of the pending question of jurisdiction. See *Feghoul v. Bush*, 06-CV-618 (RWR) (D.D.C. Oct. 31, 2006) (dkt no. 24) (Ex. M) ("Despite the lack of finality regarding the [jurisdictional] issues on appeal, . . . it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right -- a meaningful communication with counsel regarding the factual basis of petitioner's detention."); *Kahn v. Bush*, 05-cv-1001 (ESH) (D.D.C. Aug. 10, 2006) (dkt no. 20) Ex. N) (finding that factual returns "will obviously be needed regardless of the resolution of the jurisdictional question . . . Without access to the information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings."); *Al-Ghizzawi v. Bush*, 05-CV-2378 (JDB) (D.D.C. Aug 9, 2006) (dkt no. 23) (Ex.

O) (deciding to order production of factual returns because "the outcome sought by petitioner through the present motion would ultimately be achieved regardless of the disposition of the jurisdictional questions . . ." and "[t]o do otherwise could unnecessarily prejudice petitioner's ability to timely and meaningfully communicate with counsel and advance his claims, given the logistical difficulties and limitations associated with attorney-client communications in this unique detention setting.").

Just as Petitioners needed the protective order to meet with their lawyers and begin the process of establishing an attorney-client relationship, the factual returns are a necessary next step to allow counsel to effectively represent Petitioners. Failing to require production of the factual returns will place a large burden on Petitioners by hampering their ability to investigate the allegations against them. In contrast Respondents, will not be prejudiced by such production.

## CONCLUSION

For the reasons discussed above, Petitioners respectfully request that the Court enter an order in the form attached hereto as Exhibit P.  Petitioners further request oral argument.

Dated: New York, New York
       January 25, 2007

           Respectfully submitted,

           Counsel for Petitioners

           SCHIFF HARDIN LLP
           623 Fifth Avenue
           New York, New York  10022
           Tel:  (212) 753-5000
           Fax: (212) 753-5044
               *and*
           6600 Sears Tower
           Chicago, Illinois  60606
           Tel:  (312) 258-5500
           Fax: (312) 258-5600

           By: _____
               Brian J. Neff

           *Of Counsel*
           CENTER FOR CONSTITUTIONAL RIGHTS
           666 Broadway, 7th Floor
           New York, New York  10012
           Tel:  (212) 614-6439
           Fax: (212) 614-6499

NY\ 5119188.3