IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| MOHAMED AL-ZARNOUQI, *et al.*,<br>*Petitioners*<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br>*Respondents.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-cv-01767-RMU |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO VACATE OR STAY ORDER REQUIRING PRODUCTION OF FACTUAL RETURNS**

Petitioners Mohamed Al-Zarnouqi and Mashour Abdullah Muqbel Alsabri (hereinafter referred to collectively as "Petitioners"), together with Next Friend Mohamed Muqbel Ahmed Alsabri as Co-Petitioner, by and through undersigned counsel, respectfully submit this memorandum in opposition to Respondents' motion to vacate or stay this Court's February 14, 2007, Order directing Respondents to produce factual returns for Petitioners by April 23, 2007 (hereinafter "the Factual Return Order"). For the reasons set forth below, Respondents' motion should be denied.

## BACKGROUND

Petitioners are Yemeni nationals who were taken into custody in Pakistan in 2002. They have been detained at Guantánamo without charge for approximately five years.

Undersigned counsel volunteered to represent Petitioners and, on October 16, 2006, filed a Petition for *habeas corpus* on their behalf. On October 20, 2006, Petitioners filed a motion for entry of the standard Protective Order that has been entered in the Guantánamo *habeas* cases ("the Protective Order"). Respondents opposed that motion, arguing that due to the *habeas*-stripping provisions of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("DTA") and the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"), the Court lacked jurisdiction. [Docket No. 7 at 2-7.] The Court rejected Respondents' arguments, holding that any uncertainty regarding the matter of jurisdiction did not preclude the Court from acting. [Docket No. 15 at 2.] The Court entered the Protective Order, stayed the case, and required that Respondents provide counsel for Petitioners with thirty days' notice of any transfer. [*Id.* at 3-4.][1]

On January 26, 2007, Petitioners filed a Motion for an Order Requiring Respondents to Produce Petitioners' Factual Returns. [Docket Nos. 17-23.] In support of that motion, counsel noted that timely production of factual returns was essential for a wide range of reasons -- *e.g.*, to determine whether Petitioners are properly designated as "enemy combatants," to investigate and potentially rebut Respondents' allegations, to facilitate the formation of attorney-client relationships, to assist in preparing for client meetings, to ensure that Petitioners are represented effectively, and to prevent the loss of evidence. [Docket No. 20 at 4.] Respondents opposed that motion, again arguing that the Court lacked the jurisdiction. [Docket No. 24 at 1-5.] This Court

---

[1] Respondents have filed an appeal from the Court's thirty-day notice Order. [Docket No. 25.]

again rejected that argument, and directed Respondents to produce factual returns by April 23, 2007. [Minute Order entered 2/14/07.]

On April 6, 2007, Respondents filed their Motion to Vacate the Court's Factual Return Order. [Docket No. 30.]

## ARGUMENT

### I. THIS ACTION SHOULD REMAIN STAYED AND NOT BE DISMISSED. THEREFORE, RESPONDENTS' MOTION SHOULD BE DENIED.

Respondents' motion rests upon their claim that, in light of the Supreme Court's denial of certiorari in *Boumediene v. Bush*, 127 S. Ct. 1478 (2007), the dismissal of this case will be required once Respondents file their motion requesting that relief. However, the constitutionality of the *habeas*-stripping provisions of the DTA and MCA is still very much an open issue. In *Boumediene*, the Supreme Court merely deferred consideration of that issue to provide the detainees the opportunity to exhaust the remedies available under the DTA. Consistent with that ruling, Petitioners will ask this Court to exercise its authority to defer any final judgment and continue the stay until the question of the Court's jurisdiction is conclusively resolved.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879, 118 S. Ct. 1761, 140 L. Ed. 2d 1070 n. 6 (1998) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163 (1936)). This authority includes the "broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." *IBT/HERE Employee Rep. Council v. Gate Gourmet Div. Am.*, 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (RMU); *see also Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002) (RMU) (same).

Thus, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *IBT/HERE*, 402 F. Supp. 2d at 292 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)).

As this Court has recognized, an outstanding issue concerning the court's jurisdiction is no impediment to the issuance of a stay. *IBT/HERE*, 402 F. Supp. 2d at 293 (granting stay although "defendants may be correct that the court no longer has jurisdiction over this case"). Moreover, the Supreme Court has held that a *habeas* action may appropriately be stayed to afford the petitioner the opportunity to exhaust all available remedies. *Rhines v. Weber*, 544 U.S. 269, 276-78 (2005).

A continued stay is warranted here because the disposition of the *Boumediene* appeal indicates there will be further proceedings bearing upon the constitutionality of the *habeas*-stripping provisions of the DTA and MCA. The Court of Appeals' ruling in *Boumediene* was a 2-1 decision in which the majority rejected the argument that the statutory provisions denying the district courts jurisdiction to hear the *habeas* petitions filed on behalf of the Guantánamo detainees violate the Suspension Clause. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). The detainees petitioned for *certiorari*. In support of their Petition, they noted that in a number of respects the Court of Appeals decision was in conflict with the Supreme Court's rulings in two prior cases -- *Rasul v. Bush*, 542 U.S. 466 (2004) and *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006) -- in which the Supreme Court had reversed Circuit decisions rejecting the claims of Guantánamo detainees. Specifically, the detainees noted, *inter alia*, that the Court of Appeals ruling was at odds with prior Supreme Court rulings concluding: that the circumstances of the Guantánamo detainees are fundamentally different from those presented in *Johnson v.*

*Eisentrager,* 339 U.S. 763 (1950); that the detainees' access to *habeas* is consistent with the historical reach of the writ at common law; and that the detainees are confined within the territorial jurisdiction of the United States. Pet. For Writ of Cert., *Al Odah v. United States*, 2007 WL 671010 (3/5/07).

By decision issued on April 2, 2007, the Supreme Court denied certiorari. *Boumediene v. Bush*, 127 S. Ct. 1478 (2007). Three Justices – Breyer, Souter and Ginsberg -- voted in favor of granting certiorari. Justices Stevens and Kennedy – both of whom voted in favor of the detainees in *Rasul* and *Hamdan* – joined the remaining Justices in voting to deny certiorari, but they issued a Statement explaining why they believed it was "appropriate to deny these petitions *at this time.*" *Id.* (statement of Stevens and Kennedy, JJ., respecting the denial of certiorari) (emphasis added). The Statement began by noting "the obvious importance of the issues raised in these cases" and then indicated that certiorari was being denied only so that petitioners could first exhaust the remedies available under the DTA. *Id.* Furthermore, the Statement notes that the Supreme Court could address the jurisdictional issue, even before the DTA remedies were exhausted, if petitioners could later show unreasonable delay of the DTA cases "or some other and ongoing injury." *Id.* Expanding on this point, Justices Steven and Kennedy indicated that if the government were "to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* The Statement concluded with a reminder that denial of certiorari is not a decision on the merits. *Id.*

Thus, five Justices have expressed their willingness to address the jurisdictional issue once a case is presented in which a detainee can demonstrate that he has exhausted the remedy

provided under the DTA. *Id.*[2] Under these circumstances, Respondents' suggestion that the jurisdictional issue has been resolved with finality, such that a dismissal of this case is required, ignores the gravamen of the Supreme Court's disposition of *Boumediene*.

The better course is continuation of the stay. Respondents will not suffer any significant prejudice from simply holding this matter in abeyance. In contrast, Petitioners will be severely prejudiced by the potential interruption of contact with counsel, and the loss of the Order requiring that their counsel receive thirty days' notice of any proposed transfer. In addition, the district court and counsel will incur a substantial unnecessary burden if, following a dismissal of this case, the Supreme Court confirms that a DTA action is not a constitutionally adequate substitute for *habeas*. At that point, another Petition would have to be prepared and filed, and all related motions relitigated.

Moreover, a stay would not continue for an inordinate period of time. A number of detainees are already well on the way towards exhausting their DTA remedy. At the time of the *Boumediene* ruling, there were five DTA matters already pending in the Court of Appeals. The first DTA case filed in that Court, *Paracha v. Gates*, No. 06-1038 (filed Jan. 24, 2006), has been pending for approximately fifteen months and the Court has scheduled oral argument in September. In addition, there has already been considerable briefing on various issues relating to the procedures to be employed in such actions. Oral argument on these matters is scheduled for May 15, 2007. *Bismullah v. Gates*, No. 06-1197; *Parhat v. Gates*, No. 06-1397. Thus, substantial progress has already been made towards presenting the Supreme Court with a case in

---

[2] There are two other Guantánamo petitions still pending in the Supreme Court that bear directly on the MCA jurisdictional holding of the Court of Appeals: *Hamdan v. Rumsfeld*, No. 06-1169 (petition for certiorari before judgment seeking review of Judge Robertson's ruling on the MCA jurisdictional issue); and *In re Ali*, No. 06-1194 (original habeas petition, to which the Supreme Court directed the government to respond).

which they may reach the jurisdictional issue on the merits. Moreover, as noted above, Justices Stevens and Kennedy have left open the possibility of accepting a case even before the DTA remedy is exhausted. 127 S. Ct. at 1478.

Under these circumstances, Respondents' efforts to avoid compliance with the Court's Factual Return Order should be rejected. Contrary to Respondents' suggestion, it would be premature for the Court to dismiss this case for lack of jurisdiction. Petitioners will oppose any motion seeking dismissal and will request that the Court exercise its discretion in favor of a continuation of the stay, holding this matter in abeyance pending a definitive resolution of the jurisdictional issue by the Supreme Court.

## II. RESPONDENTS' MOTION TO VACATE THE FACTUAL RETURN ORDER SHOULD BE DENIED BECAUSE RESPONDENTS WILL IN ANY EVENT BE REQUIRED TO PRODUCE THIS INFORMATION IN PETITIONERS' DTA ACTIONS.

Respondents' motion should be denied for the additional reason that Respondents will suffer no prejudice if required to comply with the Factual Return Order. In accordance with the Supreme Court's disposition of *Boumediene*, Petitioners will pursue exhaustion of the remedy available under the DTA by soon filing DTA actions in the Court of Appeals for review of their "enemy combatant" classifications. The record in those DTA actions will be comprised in large

part of the materials Respondents are obliged to produce pursuant to the Factual Return Order.[3] Thus, Respondents have an obligation in any event to produce this material.[4]

Requiring compliance with the Factual Return Order will have the additional benefit of minimizing further delay of counsel's access to the alleged factual basis, if any, for the detention of Petitioners. To date, the government has not provided counsel for Petitioners *any* information relating to the basis for that detention. The only government information counsel has been able to obtain are some CSRT/ARB materials released -- over the government's objection -- as a result of a Freedom of Information Act suit filed by the Associated Press. For Petitioner Alsabri, this constitutes but a single page: a "Summary of Evidence for Combatant Status Review Tribunal," which lists five allegations, but fails to identify the basis for such claims. And, of course, counsel have not yet been provided any classified information relied upon by Respondents.

Production of the factual returns is essential to any meaningful representation of Petitioners. In the Memorandum Order granting Petitioners' Motion for Entry of a Protective Order, this Court noted that the pending jurisdictional issue should not impede counsel's access to this information:

> "Despite the lack of finality regarding the issues on appeal, however, it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right -- a meaningful communication with counsel regarding the factual basis of petitioner's detention. . . ." *Feghoul v. Bush*, 2006 WL 3096856, at *1 (D.D.C.

---

[3] Thus, for example, in one of the DTA actions pending in the Court of Appeals, *Parhat v. Gates*, No. 06-1397, the government filed a Certified Index To The Record (filed 1/25/07) which listed approximately thirty documents for each detainee, including such items as a "Classified Summary of Basis For Tribunal's Decision For ISN 275, Signed By CSRT President (Classified Secret/NOFORN)."

[4] Furthermore, in granting Petitioners' Motion for Factual Returns, this Court has already rejected Respondents' arguments that production of factual returns puts classified information at risk and imposes an onerous logistical burden on the government. [Docket No. 24 at 7.]

Oct. 31, 2006) (internal quotations and punctuation omitted) (quoting *Said v. Bush*, Civil Action No. 05-2384, slip. op. at 10 (D.D.C. May 23, 2006)).

[Docket No. 15 at 2.] In a similar vein, other judges of this Court have recognized that the detainees' right to access to counsel "is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions." (4/13/06 Order in *Al Salami v. Bush*, 05-2452 at 1; *see also* 5/18/06 Order in *Razakah v. Bush*, 05-237 at 3-4 (same).)

Whether in connection with this *habeas* action or in connection with the DTA actions to be filed in the Court of Appeals, counsel have the right to learn the basis for Respondents' detention of Petitioners. Delay in providing the information only impedes counsel's ability to pursue both courses of action. Respondents' attempt to continue to deny counsel this information should be rejected.

## CONCLUSION

For the reasons discussed above, Petitioners respectfully request that the Court deny Respondents' motion to vacate or stay this Court's February 14, 2007, Order requiring production of factual returns, and grant such further relief as is appropriate and just.

Dated: New York, New York
April 13, 2007

Respectfully submitted,

Counsel for Petitioners

SCHIFF HARDIN LLP
623 Fifth Avenue
New York, New York  10022
Tel: (212) 753-5000
Fax: (212) 753-5044
   *and*
6600 Sears Tower
Chicago, Illinois  60606
Tel: (312) 258-5500
Fax: (312) 258-5600

By:_____
   Brian J. Neff

*Of Counsel*
CENTER FOR CONSTITUTIONAL
   RIGHTS
666 Broadway, 7th Floor
New York, New York  10012
Tel: (212) 614-6439
Fax: (212) 614-6499