UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| IN RE: | ) |
| | ) |
| | ) Misc. No. 08-442 (TFH) |
| GUANTANAMO BAY | ) |
| DETAINEE LITIGATION | ) Civil Action Nos. |
| | ) |
| | ) 02-CV-0828, 04-CV-1136, 04-CV-1164, 04-CV-1194, |
| | ) 04-CV-1254, 04-CV-1937, 04-CV-2022, 04-CV-2035, |
| | ) 04-CV-2046, 04-CV-2215, 05-CV-0023, 05-CV-0247, |
| | ) 05-CV-0270, 05-CV-0280, 05-CV-0329, 05-CV-0359, |
| | ) 05-CV-0392, 05-CV-0492, 05-CV-0520, 05-CV-0526, |
| | ) 05-CV-0569, 05-CV-0634, 05-CV-0748, 05-CV-0763, |
| | ) 05-CV-0764, 05-CV-0833, 05-CV-0877, 05-CV-0881, |
| | ) 05-CV-0883, 05-CV-0889, 05-CV-0892, 05-CV-0993, |
| | ) 05-CV-0994, 05-CV-0995, 05-CV-0998, 05-CV-0999, |
| | ) 05-CV-1048, 05-CV-1124, 05-CV-1189, 05-CV-1220, |
| | ) 05-CV-1236, 05-CV-1244, 05-CV-1347, 05-CV-1353, |
| | ) 05-CV-1429, 05-CV-1457, 05-CV-1458, 05-CV-1487, |
| | ) 05-CV-1490, 05-CV-1497, 05-CV-1504, 05-CV-1505, |
| | ) 05-CV-1506, 05-CV-1509, 05-CV-1555, 05-CV-1590, |
| | ) 05-CV-1592, 05-CV-1601, 05-CV-1602, 05-CV-1607, |
| | ) 05-CV-1623, 05-CV-1638, 05-CV-1639, 05-CV-1645, |
| | ) 05-CV-1646, 05-CV-1649, 05-CV-1678, 05-CV-1704, |
| | ) 05-CV-1725, 05-CV-1971, 05-CV-1983, 05-CV-2010, |
| | ) 05-CV-2083, 05-CV-2088, 05-CV-2104, 05-CV-2112, |
| | ) 05-CV-2185, 05-CV-2186, 05-CV-2199, 05-CV-2200, |
| | ) 05-CV-2249, 05-CV-2349, 05-CV-2367, 05-CV-2371, |
| | ) 05-CV-2378, 05-CV-2379, 05-CV-2380, 05-CV-2381, |
| | ) 05-CV-2384, 05-CV-2385, 05-CV-2386, 05-CV-2387, |
| | ) 05-CV-2398, 05-CV-2444, 05-CV-2477, 05-CV-2479, |
| | ) 06-CV-0618, 06-CV-1668, 06-CV-1674, 06-CV-1684, |
| | ) 06-CV-1688, 06-CV-1690, 06-CV-1691, 06-CV-1758, |
| | ) 06-CV-1759, 06-CV-1761, 06-CV-1765, 06-CV-1766, |
| | ) 06-CV-1767, 07-CV-1710, 07-CV-2337, 07-CV-2338, |
| | ) 08-CV-0987, 08-CV-1085, 08-CV-1101, 08-CV-1104 |
| _____ ) | 08-CV-1153, 08-CV-1185, 08-CV-1207 |

**JOINT REPORT IN RESPONSE TO COURT'S JULY 11, 2008 SCHEDULING ORDER**

Pursuant to the Court's July 11, 2008 Scheduling Order, undersigned counsel for petitioners and respondents in the above-captioned cases jointly state as follows:

**A.**

**1.       Respondents' Position**

With respect to the issue of amendments to the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004), as supplemented by the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004, respondents have attached hereto as Exhibit 1 a proposal to amend the procedures for submitting filings to the Court.  Respondents request that the Court enter an order adopting these filing procedures in the above-captioned cases and vacate the current provisions of the Amended Protective Order governing filing procedures (*i.e.*, paragraphs 46 and 47 of the Amended Protective Order as well as the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order).  The amended filing procedures update and improve the process for submitting filings in two significant respects.  First, petitioner's counsel would be authorized to submit filings directly on Court's electronic filing system if counsel do not believe and have no reason to believe that a filing contains classified or protected information.  Second, filings containing only "protected information," as defined by the Amended Protective Order, but not classified information, would be submitted pursuant to Local

Civil Rule 5.1(j), the local rule of this Court governing under seal filings.  Respondents reserve

the right to seek future modifications to the Amended Protective Order and supplemental orders

as appropriate.

With respect to a proposed protective order for use in cases involving "high-value

detainees" ("HVDs"), respondents have proposed to counsel for HVD petitioners the protective

order adopted by the Court of Appeals in HVD cases brought under the Detainee Treatment Act

("DTA"), revised to reflect matters including procedural and substantive differences between

DTA cases in the Court of Appeals and habeas corpus proceedings in this Court.  No agreement

on the proposed HVD protective order has been reached, however, and at least some petitioners'

counsel believe that the matter should be resolved through litigation, on a schedule to be

determined by the Court through input of the parties at a status conference.  Respondents are

amenable to the Court holding a status conference to determine a schedule for litigating

appropriate issues related to an HVD protective order.

2.     **Petitioners' Position**

a.   Proposed Amended Protective Order

Petitioners urge the Court to enter in all Guantánamo detainee habeas cases the protective

order entered by Judge Green in *In re Guantánamo Detainee Cases*, 344 F. Supp. 2d 174

(D.D.C. 2004).   This order includes the following: (1) the Amended Protective Order and

Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo

Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004); (2) the Order

Addressing Designation Procedures for "Protected Information," first issued on November 10,

2004; and (3) the Order Supplementing and Amending Filing Procedures Contained in

2

November 8, 2004 Amended Protective Order, first issued on December 13, 2004. Petitioners refer to these orders collectively as the "Standard Protective Order."

The Standard Protective Order, as entered in *Zalita v. Bush*, No. 05-cv-1220 (RMU), is attached hereto as Petitioners' Exhibit A. This order was the product of months of negotiation, briefing and argument before Judge Green, and is fully capable of governing all Guantánamo habeas cases. *See Adem v. Bush*, 425 F. Supp. 2d 7, 10-12 (D.D.C. 2006) (describing the lengthy process by which the Standard Protective Order was created).[1]

---

[1] The Court Security Office ("CSO") has recommended additional ministerial changes to the Standard Protective Order. *See* Exhibit 1. Petitioners consent to their entry by the Court with one clarification: the government must provide to counsel and the Court a version of each court filing containing classified or protected information that is suitable for filing on the public record *within two weeks* of the original filing date. Respondents object to this proposed amendment by petitioners' counsel and request an opportunity to be heard on this point before any such requirement is adopted by the Court.

Nothing in the above should be taken to foreclose the possibility that individual counsel may in the future propose amendments to the protective order in their particular cases to reflect special circumstances arising in those particular cases.

b.  Proposed Protective Order for "High-Value" Detainees[2]

As an initial matter, Petitioners object to any reference or characterization of certain Guantánamo prisoners as "High-Value Detainees" or "HVDs," and ask this Court not to refer to any detainees by those terms.  Whether a Guantánamo detainee has any intelligence "value" may only be determined, if at all, through habeas corpus, and is not relevant to whether that prisoner is entitled to habeas relief.

Petitioners contend that this Court should enter the Standard Protective Order in cases involving presumptively TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION ("TS//SCI") information.  Although each case involves different facts, each case invokes the same statutory and constitutional principles, and each raises at least one common question – whether the prisoner's continued imprisonment is justified in light of constitutional principles or is unlawful.  To date, the Standard Protective Order has governed habeas cases involving all levels of classified information.  In fact, the Standard Protective Order specifically contemplates and is fully capable of governing filings that contain presumptively TS//SCI information.[3] Indeed, presumptively TS//SCI information has already been filed in at least one habeas case under the Standard Protective Order.  *See* Motion for Hearing for Inquiry Concerning

---

[2]     As indicated below, there is a dispute concerning representation of petitioner Al-Nashiri (ISN 10015).  Counsel in *Al-Nashiri v. Bush*, No. 08-cv-1207 (RWR), join this response to the Court's July 11, 2008 Order.  The position of counsel in *Ali Nashir v. Bush*, No. 08-cv-1085 (PLF), is uncertain.  Counsel for other petitioners take no position concerning the dispute in representation.

[3]     The Standard Protective Order expressly sets forth provisions to govern habeas counsel's access to TS//SCI information.  *See* Amended Protective Order ¶ 9 (defining "classified information" to be used in these cases as including "any classified document or information" that has been classified as "'CONFIDENTIAL,' 'SECRET,' or 'TOP SECRET,' or additionally controlled as 'SENSITIVE COMPARTMENTED INFORMATION (SCI).'").

Destruction of Evidence Related to CIA Detainee Interrogations, *Zalita v. Bush*, No. 05-cv-1220 (RMU) (D.D.C.) (dkt. no. 82) (filed Jan. 15, 2008). At the time the original protective order was litigated before Judge Green, the government did not argue that additional provisions were necessary to protect TS//SCI information, and it should not be heard to argue otherwise now. No harm resulted from the filings in the *Zalita* case, and none would if the Standard Protective Order were entered in other cases involving presumptively TS//SCI information.[4]

Petitioners object to the government's proposed protective order, which is modeled on the protective order applicable in Detainee Treatment Act cases and contains many substantive differences from the Standard Protective Order. The disputed issues are too numerous and complex to address fully or adequately in an unclassified joint status report. Accordingly, to the extent this Court is inclined to enter a protective order that differs from the Standard Protective Order in the cases involving presumptively TS//SCI information, Petitioners request that this Court schedule separate briefing and argument on the protective order issues.[5]

If the Court chooses to order briefing and argument, a question immediately arises concerning the conditions under which counsel labors when the briefing and argument proceed. The government may argue that the protective order entered in Petitioners' Detainee Treatment Act cases should remain in place throughout briefing and argument. But that protective order is so restrictive that it would actually prevent counsel from briefing and arguing the issues fully and

---

[4]     Moreover, to the extent the CSO may request further ministerial changes to the Standard Protective Order, such as modifications to the procedures for transporting legal mail containing presumptively TS//SCI information, Petitioners will attempt to reach agreement with the CSO and the government on those matters.

[5]     Because the interests of the Petitioners in the cases in question are quite varied, they request that the Court provide the opportunity for separate briefing (rather than requesting a

adequately, and in a coordinated fashion.  Petitioners thus request an initial status conference to address various issues that will plainly arise in connection with briefing and argument.

Among these particular issues, Petitioners must be permitted to disclose presumptively TS//SCI information to this Court in their briefs and argument in order to ensure full and adequate consideration of all relevant protective order issues.  Petitioners' TS//SCI security-cleared counsel also must be permitted to share presumptively TS//SCI information among themselves in order to make a single coordinated presentation to this Court.  But pursuant to the terms of the protective order that currently governs counsel access to Petitioners in their Detainee Treatment Act cases, counsel are expressly prohibited from sharing classified information with other counsel or with this Court absent permission from the Justice Department.

The ability to share presumptively TS//SCI information is a particularly important issue that potentially cuts across numerous Guantánamo detainee habeas cases.  In any hypothetical instances where prisoners in cases involving presumptively TS//SCI information may have inculpated other Guantánamo prisoners while under torture, including military commission defendants, or perhaps federal criminal defendants, counsel for those prisoners or defendants would require some mechanism to discover and test exculpatory information, while maintaining privilege and an appropriate working relationship.  Thus, ensuring consistency among all counsel who will require access to presumptively TS//SCI information is a further reason why this Court should enter the Standard Protective Order in all habeas cases.

---

single brief and a single representative at argument) from this group of petitioners.

Petitioners also would need to make *ex parte*, sealed submissions to the Court in order to address disputed protective order issues in context of their privileged and confidential litigation strategies. These matters should also be addressed at a status conference.

In addition, Petitioners notify this Court that they anticipate there will be substantial, material factual disputes in the cases involving presumptively TS//SCI information warranting discovery. As counsel have already informed counsel for the government, petitioner Majid Khan[6] specifically will seek to serve interrogatories and deposition notices (or subpoenas) on certain current and former senior government officials who may have exculpatory information, if any, concerning him. Khan also will seek to interview other prisoners in U.S. custody.

Finally, Petitioners request that representatives from the CIA General Counsel's Office be required to attend all proceedings before this Court in cases involving presumptively TS//SCI information. Their presence is necessary in order for them to justify or verify the positions taken on various matters, including with respect to entry of a protective order, and on the ground that these officials appear to be the sole decision-makers with settlement authority in these cases. The Special Litigation Team, as counsel for the Privilege Review Team, should also be involving in briefing and argument concerning protective order issues.

**B.** With respect to duplicate petitions that were filed on behalf of a single individual, the parties have taken significant steps to resolve this issue. The problem of duplicate petitioners arises primarily because of two habeas petitions filed in late 2005 involving, collectively, over two hundred petitioners: *Mohammon v. Bush*, 05-CV-2386 (RBW) and *Al-Halmandy v. Bush*, 05-CV-2385 (RMU). These two petitions sought habeas relief on behalf of many petitioners that

---

[6]       Khan's habeas case is *Khan v. Bush*, 06-cv-1690 (RBW).

had previously-filed habeas actions already pending on their behalf.  Since the filing of these two

cases, counsel for petitioners and respondents have worked together to identify only those

petitioners in the cases who do not have duplicate habeas petitions pending before the District

Court and have not been transferred or released from Guantanamo Bay.  The thirty petitioners in

the *Mohammon* case that meet this criteria are listed in Exhibit 2.[7]  A list of the seven petitioners

in the *Al-Halmandy* case that meet this criteria listed in petitioner's individual status report

attached hereto as Exhibit 3.[8]  The parties are in agreement that the remaining petitioners in the

two cases not listed in Exhibits 2 & 3 should be dismissed without prejudice.  Petitioners,

however, reserve the right to reinstate the dismissed petitions, if necessary, as to those petitioners

who may have been transferred or released from Guantanamo Bay.

      Assuming the dismissal of the aforementioned petitioners in the *Mohammon* and

*Halmandy* cases, and excluding the duplicate petitions that have already been dismissed, as well

as the cases pending before Judges Leon and Sullivan that are not consolidated herewith, the

parties are aware of only two duplicate petitions.  First, petitioner Younis Shakur (ISN 197) in

*Imran v. Bush*, 05-764 (CKK) has a previously-filed petition pending in *Al-Wazan v. Bush*, 05-

CV-329 (PLF).  Respondents' position is that the petitioner should be dismissed from the later-

filed case (*Imran*) and should proceed in the earlier- filed case (*Al-Wazan*).  Petitioner's counsel

is willing to proceed in the earlier-filed action, should the Court prefer.  Second, petitioner

Abddul Rahim Hussein Muhammed Ali Nashir (ISN 10015) in *Ali Nashir v. Bush*, 08-CV-1085

---

      [7] Respondents note that the issue of whether petitioner Ahmed Omar (ISN 30) proceeds
in the *Mohammon* case or a later-filed case before Judge Sullivan, *Al Hakimi v. Bush*, 08-CV-
1111 (EGS), has not been resolved.

      [8] Respondents note that they are still in the process of verifying the proposed
identifications of petitioners Nargeri, Warzly, and Saleh.  Respondents will report back to the

(PLF) has a second petition pending on his behalf in *Al-Nashiri v. Bush*, 08-CV-1207 (RWR).

As explained in respondents' individual status report filed on July 18, 2008 in the *Ali Nashir*

case, there is a dispute among two different groups of counsel regarding the representation of

petitioner Nashir.  Respondents take no position at this time as to that dispute or with respect to

which petition should proceed, but reserve their position on these issues as appropriate.

      **C.**      Attached hereto as Exhibit 4 is a chart listing petitioners currently detained at

Guantanamo Bay whose habeas corpus cases are currently dismissed on jurisdictional grounds.[9]

Petitioners request, and Respondents do not oppose, vacatur of the dismissal orders in these

cases.

      **E.**[10]

            **1.**      **Respondents' Position**

      Attached hereto as Exhibits 5 and 6 are charts listing the petitioners in the above-

captioned cases who are approved by the Department of Defense for release or transfer from

Guantanamo Bay.  Exhibit 5 lists those petitioners who are approved for transfer to the control of

another government for release.  Exhibit 6 lists those petitioners who are approved for transfer to

the control of another government for possible detention, investigation, and/or prosecution as

that government deems appropriate under its own laws.

      With respect to consolidation of the petitions listed in Exhibits 5 and 6 before one Judge,

---

Court in the event of a dispute regarding the identity of these petitioners.

    [9] Additional cases were dismissed on jurisdictional grounds by the District Court following the Court of Appeals decision in *Boumediene*, but many of those dismissal orders were later vacated by the District Court or by the Court of Appeals.  The parties have not included a list of these cases in this report.  Rather, the cases listed on Exhibit 4 are the only cases in which jurisdictionally-based dismissal orders have not been vacated.

    [10] Subsection "D" was omitted from the Court's July 11, 2008 Order.

respondents have no objection to this suggestion.  However, despite the discretionary decision

that these petitioners may be released from United States custody and transferred to a foreign

country, they nonetheless have been determined to be enemy combatants by the United States,

and there are many unique fact-specific, or country-specific circumstances that will be presented

in these petitions.  Thus, although Respondents do not object to consolidation, the Government

reserves its rights with regard to all unresolved issues as to such detainees, including but not

limited to questions about the effect of decisions of the Department of Defense approving a

detainee for release or transfer, about the authority of the Department of Defense to hold such a

detainee as an enemy combatant, about the assurances necessary to effectuate release from

United States custody and transfer to a foreign country, and about the proper role of the judiciary

in reviewing transfer determinations.  *See Munaf v. Green*, 128 S.Ct. 2207, 2226 (2008).

Another issue regarding the consolidation of cases appears appropriate to note for the

Court's attention.  On July 10, 2008, the Court, per Judge Hogan sitting as coordinating judge,

entered an order in *Mohammon v. Bush*, Civil Action No. 05-CV-2386 (Docket Number 481),

consolidating the claims of two of the many petitioners in that case with the claims of six other

cases, and transferring those five cases along with the claims of the two named *Mohammon*

petitioners to the docket of Judge Urbina.  On the same day, another order was entered, per Judge

Huvelle as the Chair of the Calendar and Case Management Committee, Docket Number 483,

transferring the *Mohammon* case in its entirety to the docket of Judge Urbina.  Respondents

respectfully request that the Court clarify whether the second order was intended to effectuate the

first.  If so, because the first order transferred only part of the case to Judge Urbina's docket,

respondents respectfully request that the second order be reconciled with the first by clarifying

10

that the claims of only those *Mohammon* petitioners mentioned by name in Judge Hogan's order, Docket Number 481, be transferred to the docket of Judge Urbina.

### 2.    Petitioners' Position[11]

As the Court has recognized in its July 11, 2008 Scheduling Order (¶2.E.), not all of the petitioners who have been cleared or authorized for release or transfer (for convenience, the "cleared petitioners") are similarly situated. For example, some seek, while others oppose, repatriation to the country of their birth; and some have individual defenses to continued detention that are not available to others. It should not be surprising, therefore, that notwithstanding a conference call and numerous other communications counsel for these more than fifty petitioners are not able to state a unified position on the subject of consolidation.

A large majority of the petitioners subscribing to this joint report oppose full consolidation and transfer of these cases to a single judge for all purposes, because they believe that each petitioner is entitled under the Supreme Court's *Boumediene* decision to a separate hearing on the merits of his individual habeas petition.

---

[11]    The following response to paragraph 2.E of the July 11, 2008 Scheduling Order is submitted on behalf of the petitioners in the following proceedings, whose counsel (i) know that their clients have been cleared for release from Guantánamo, and (ii) have been able to communicate on the subject of consolidation: 04-cv-1254 (for petitioners Mohammed Mohammed Hassen, ISN 681, and Adil Said Al Haj Obeid Al Busayss, ISN 165); 05-cv-0748 (for petitioners Mohsen Abdrub Aboassy, ISN 091, Mohammed Saeed Bin Salman, ISN 251, and Sameer Najy Hasan Mukbel, ISN 043); 05-cv-0994 (for petitioner Tohirjanovich, ISN 675); 05-cv-1347 (for petitioner Farhi Saiid bin Mohammed, ISN 311); 05-cv-1353 (for petitioner Motai Saib, ISN 288); 05-cv-1497 (for petitioner Adel al Wirghi, ISN 502); 05-cv-1504 (for petitioner Nabil Hadjarab, ISN 238); 05-cv-1505 (for petitioner Abbar Sufian Al Hawary, ISN 1016); 05-cv-2349 (for petitioner Ahmed Belbacha, ISN 290); 05-cv-2386 (for petitioners Al Yafie, ISN 034, Ali Sher Hamidullah, ISN 455, El Falesteny, ISN 519, and Sayf Bin Abdallah, ISN 46); 06-cv-0618 (for petitioner Feghoul, ISN 292); 06-cv-1766 (for petitioner Hentif, ISN 259); and 08-cv-1185 (Mohammed Abd Al Al Qadir, ISN 284).

At the same time, a large (but not the same) majority of the cleared petitioners agree that it may be beneficial to coordinate the efforts to secure their transfer to countries where they will be free from persecution and to consolidate their cases for the limited but significant purpose of furthering those efforts. With due regard for separation of powers principles, a single judge handling the cases of all cleared petitioners may be able to facilitate solutions to transfer-related problems that have to date been intractable.

All of the cleared petitioners strongly oppose an indeterminate continuation of their detention, which for many is in its seventh year. Therefore, consolidation of the cases for the limited purpose described above should be without prejudice to the right of any petitioner who is prepared to proceed with an adjudication of the merits of his petition to seek at any time such an adjudication by the judge to whom the proceeding has been assigned (or, with the consent of that judge, another judge of this court).

Furthermore, the cleared petitioners ask the Court to make clear, if it orders consolidation to any extent, that (i) the government's obligations under paragraph 4 regarding factual returns and amended returns applies to cleared as well as uncleared petitioners, and (ii) cleared petitioners shall be entitled to discovery under the same conditions as uncleared petitioners. All cleared petitioners, but particularly those who continue to bear the stigma of an enemy combatant designation, are entitled to know whether the government believes that facts in addition to those in the CSRT record justify continued detention.

F.     The parties propose that the coordinating judge enter an omnibus order providing that all *Boumediene*-related motions to dismiss and motions to stay be denied as moot, subject to the following further qualifications on which the parties do not agree, as noted.

In April 2007, respondents filed motions to dismiss in all of the above-captioned cases that were pending at that time, on the basis of section 7 of the Military Commissions Act ("MCA"), Pub. L. No. 109-366, 120 Stat. 260, and the construction and application of that statute articulated in *Boumediene v. Bush*, 476 F.3d 981, (D.C.Cir. 2007), *rev'd*, 128 S.Ct. 2229 (2008). The Court is respectfully referred to that motion as filed in the case listed first above, which can be found at Civil Action No. 02-CV-828, Docket Number 320, which lists in its caption all the cases in which the motion was filed. Petitioners' opposed the motions to dismiss and in many cases filed stay and abey motions. The judges of this Court handled the motions to dismiss in a variety of ways, including granting them, holding the cases in abeyance or otherwise staying them, and forebearing from ruling on the motions. In light of the Supreme Court's reversal of the Court of Appeals' *Boumediene* decision, the parties are in agreement that the dismissal motions are no longer warranted insofar as they were based on section 7 of the MCA. Nor is it any longer appropriate to stay those cases.

As explained elsewhere in this Report, however, Respondents contend that dismissal of petitions brought by or on behalf of petitioners no longer at Guantanamo Bay remains appropriate. Petitioners object to dismissal on mootness or other grounds.

Accordingly, the parties consent to the lifting of any stays in these cases. Respondents content that the lifting of stays, however, should not render ripe any motions that are pending in these cases. Rather, motions should be calendered in accordance with respondents' suggestions in paragraph G, below. Petitioners object and contend that motions identified in response to paragraph G, below, should be decided as set forth in Petitioners' Exhibit B attached hereto.

The action that should be taken with regard to dismissal motions, however, according to

Respondents, involves several additional considerations. Respondents hereby withdraw their motions to dismiss grounded on section 7 of the MCA as to all petitioners who are still at Guantanamo Bay. The habeas claims of those petitioners who are no longer at Guantanamo Bay, who are listed in Exhibit 3 of Respondents' Individual Status Report, filed on July 18, 2008, should be dismissed on the ground of mootness. Again, Petitioners object to dismissal on mootness or other grounds. Nonetheless, respondents hereby withdraw the dismissal motions made as to such petitioners insofar as they are based on section 7 of the MCA. Further, according to Respondents, the Court is alerted to the fact that almost all the petitioners in these cases have named as respondents individuals who are not custodians of Guantanamo Bay detainees, and who are therefore not proper respondents, including among the most glaring examples the President and Vice President. Claims against improperly named respondents should be promptly dismissed. Petitioners object to dismissal of the President and Vice President, and other respondents, on the ground that they are custodians of Guantanamo Bay detainees and otherwise proper respondents. Additionally, respondents contend that the habeas claims of detainees against whom charges have been sworn pursuant to the Military Commissions Act should be dismissed or held in abeyance pending resolution of those charges. Because respondents believe that not all petitioners with claims subject to dismissal as described in this paragraph would agree to such dismissals, respondents intend to propose at a later date a schedule for coordinated briefing regarding the dismissal and/or abeyance of claims in these categories. Indeed, Petitioners object to the dismissal or stay of any claims of detainees against whom charges have been sworn or may be sworn pursuant to the Military Commissions Act.

**G.**      Respondents do not have any motions pending in these cases that are ripe for decision.  Petitioners have identified the motions set forth in Petitioners' Exhibit B hereto that they wish to have resolved.  Respondents propose that any motion currently pending that relates to the merits of a specific case be deferred until consideration of the merits of that case by the assigned judge, and that all other motions should be resolved in a coordinated fashion by the coordinating judge.  Petitioners object and contend that the motions should be heard in the manner set forth in Petitioners' Exhibit B.

**H.**  Respondents propose that the coordinating judge enter an omnibus order providing that stays entered in any of these cases be lifted.

**I.**  Attached hereto as Exhibit 7 is a chart listing the cases in which an appeal or petition for certiorari is pending.

**J.**

      **1.**      **Respondents' Position**

Respondents propose that biweekly telephone conferences be held on the record with regard to the coordination of these matters, with the coordinating judge presiding.  Such conferences should be held in the following fashion.  By 5:00 PM on the business day immediately preceding each conference, any petitioner's counsel wishing to be heard should send an email message to a designee of respondent's counsel and to a member of the Court's staff designated by the Court.  Should respondents wish to be heard with regard to a particular petitioner's case, respondents would notify that petitioner's counsel and the Court by 5:00 on the business day immediately preceding the conference.  Should respondents wish to be heard on a more general matter, respondents would notify one attorney designated by petitioners' counsel

15

by 4:00 PM on the business day immediately preceding the conference. The Court would call the matters to be heard by first calling the cases in the order in which petitioner's counsel's emails are received. Any case not called at that point, as to which respondents had identified an interest in being heard, would then be called. Finally, any general matters as to which respondents have provided notice would be heard. Respondents propose that no motion other than a dispositive motion or a motion for an extension of time would be entertained by the Court unless that motion was first discussed during the course of a conference set up in accordance with this paragraph.

### 2.    Petitioners' Position

a.     Petitioners do not object to regular status conferences before the Court. However, they respectfully submit that conferences should be scheduled at the Court's discretion or at the request of counsel for any party, as needed to address specific issues, rather than on any pre-set periodic schedule (*e.g.*, every two weeks). Petitioners believe there may not always be sufficient business before the Court to justify holding a regular status conference at which hundreds of petitioners' counsel will feel obligated to appear (even when they have no specific request pending before the Court).

b.     Petitioners request that counsel not located in Washington, DC, be permitted to appear by telephone at status conferences, without restrictions as to the number of counsel appearing. The government takes no position on this request.

c.     Petitioners further request that counsel be permitted to appear and participate directly in any status conferences that may impact their individual clients. Petitioners object to any requirement that they designate other representative counsel to speak on behalf of

their clients at status conferences.  The government takes no position on this request.  However, Respondents have proposed other procedures to govern status conferences, including with respect to counsel registering in advance their intention to appear and participate, to which Petitioners object.

    d.  Petitioners also object to any proposal that the parties be required to propose motions to the Court at a status conference prior to filing any non-dispositive motions. This seems to us a thinly-disguised version of the government's earlier request that the Court require pre-motion conferences before motions may be filed. There already exists a requirement that the parties confer before filing non-dispositive motions, *see* LCvR 7(m), a requirement which the judges in this district have strictly enforced. The government has not demonstrated that a problem exists – for example, it has not shown that counsel for petitioners have filed duplicative, over-numerous, or frivolous motions in the past, nor could it. There is no need to create additional layers of procedure (whose burdens will primarily affect petitioners, as the parties seeking relief here) as a solution to a non-existent problem.

  **K.**

    **1.**  **Respondents' Position**

    Respondents have agreed to provide to a petitioner's counsel the unclassified portions of the CSRT record pertaining to that petitioner, where petitioner's counsel have not previously had access to the unclassified or classified CSRT record either through habeas litigation or litigation in the Court of Appeals under the Detainee Treatment Act. Respondents anticipate providing such unclassified materials by July 31, 2008, or shortly thereafter.  If this undertaking is not complete by July 31, 2008, respondents will provide a status report to the Court on August 1,

2008, updating the Court regarding the matter and providing an anticipated completion date.

**2.    Petitioners' Position**

a.    Petitioners understand that the government is attempting to produce unclassified CSRT records by July 31, 2008, but that they may be unable to do so in every case. Petitioners object to any delay in production of the unclassified records after July 31, 2008.

b.    The government has also refused to state whether it will permit Petitioners to use in their habeas cases the classified records that were produced in connection with their Detainee Treatment Act cases. Absent the ability to use that information in their habeas cases, Petitioners' counsel may not necessarily be able to provide the Court with all relevant information concerning their clients; and their clients may be required to wait weeks or months to receive factual returns containing information that they already know, thereby delaying their habeas cases unnecessarily.

Dated: July 21, 2008                    Respectfully submitted,


/s/ Shayana D. Kadidal
Shayana D. Kadidal (D.C. Bar No. 454248)
CENTER FOR CONSTITUTIONAL          GREGORY G. KATSAS
RIGHTS                             Assistant Attorney General
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6438               JOHN C. O'QUINN
Fax:  (212) 614-6499               Deputy Assistant Attorney General


On Behalf of Petitioners with Consent[*]

                                   ___/S/____ Andrew I. Warden
                                   JOSEPH H. HUNT (D.C. Bar No. 431134)
                                   VINCENT M. GARVEY (D.C. Bar No.
                                   127191)
                                   JUDRY L. SUBAR
                                   TERRY M. HENRY
                                   ANDREW I. WARDEN (IN Bar No. 23840-
                                   49)
                                   Attorneys
                                   United States Department of Justice
                                   Civil Division, Federal Programs Branch
                                   20 Massachusetts Ave., N.W.
                                   Washington, DC  20530
                                   Tel:  (202) 514-4107
                                   Fax:  (202) 616-8470

                                   Attorneys for Respondents

---

[*] Except as noted herein.

# PETITIONERS' EXHIBITS

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  | ) | Civil Action Nos. |
| --- | --- | --- |
|  | ) | **02-CV-0299 (CKK), 02-CV-0828 (CKK),** |
|  | ) | **02-CV-1130 (CKK), 04-CV-1135 (ESH),** |
|  | ) | **04-CV-1136 (JDB), 04-CV-1137 (RMC),** |
| *In re* **Guantanamo Detainee Cases** | ) | **04-CV-1142 (RJL), 04-CV-1144 (RWR),** |
|  | ) | **04-CV-1164 (RBW), 04-CV-1166 (RJL),** |
|  | ) | **04-CV-1194 (HHK), 04-CV-1227 (RBW),** |
|  | ) | **04-CV-1254 (HHK), 04-CV-1519 (JR)** |
|  | ) |  |

## AMENDED PROTECTIVE ORDER AND PROCEDURES FOR COUNSEL ACCESS TO DETAINEES AT THE UNITED STATES NAVAL BASE IN GUANTANAMO BAY, CUBA

This matter comes before the Court upon Respondents' Motion for Protective Order to prevent the unauthorized disclosure or dissemination of classified national security information and other protected information that may be reviewed by, made available to, or are otherwise in the possession of, the petitioners and/or petitioners' counsel in these coordinated cases. Pursuant to the general supervisory authority of the Court, in order to protect the national security, and for good cause shown,

IT IS ORDERED:

1.     The Court finds that these cases involve classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know." These cases may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

2.     The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in

these cases, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with these cases, including the privilege team as defined in Exhibit A.

3.   The procedures set forth in this Protective Order will apply to all aspects of these cases, and may be modified by further order of the Court *sua sponte* or upon application by any party.  The Court will retain continuing jurisdiction to enforce or modify the terms of this Order.

4.   Nothing in this Order is intended to or does preclude the use of classified information by the government as otherwise authorized by law outside of these actions.

5.   Petitioners' counsel shall be responsible for advising their employees, the petitioners, and others of the contents of this Protective Order, as appropriate or needed.

6.   Petitioners' counsel are bound by the terms and conditions set forth in the "Revised Procedures For Counsel Access To Detainees At the U.S. Naval Base In Guantanamo Bay, Cuba," and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A.  This Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information.  Any violation of the terms and conditions of those procedures will also be deemed a violation of this Protective Order.  This paragraph does not apply with respect to provisions in the procedures contained in Exhibit A that are or have been overridden by the Court.

7.   The privilege team shall not disclose to any person any information provided by counsel for a petitioner or by a petitioner, other than information provided in a filing with the Court, unless such information, if it were monitored information, could be disclosed under Section X of Exhibit A.  Such disclosure shall be consistent with the provisions of Section X of Exhibit A.

2

<u>Definitions</u>

8.      As used herein, the words "documents" or "information" shall include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming copies and non-conforming copies (whether different from the original by reason of notation made on such copies or otherwise), and further include, but are not limited to:

      a.      papers, correspondence, memoranda, notes, letters, reports, summaries, photographs, maps, charts, graphs, interoffice and intra-office communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, telefacsimiles, invoices, worksheets, and drafts, alterations, modifications, changes and amendments of any kind to the foregoing;

      b.      graphic or oral records or representations of any kind, including, but not limited to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound recordings of any kind, and motion pictures;

      c.      electronic, mechanical or electric records of any kind, including, but not limited to, tapes, cassettes, disks, recordings, electronic mail, films, typewriter ribbons, word processing or other computer tapes or disks, and all manner of electronic data processing storage; and

      d.      information acquired orally.

9.      The terms "classified national security information and/or documents," "classified information" and "classified documents" refer to:

      a.      any classified document or information that has been classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE

3

COMPARTMENTED INFORMATION (SCI)," or any classified information contained in such document;

b.      any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that has been derived from United States government information that was classified, regardless of whether such document or information has subsequently been classified by the government pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)";

c.      verbal or non-documentary classified information known to the petitioner or petitioners' counsel; or

d.      any document and information as to which the petitioner or petitioners' counsel have been notified orally or in writing that such documents or information contains classified information.

10.      All classified documents, and information contained therein, shall remain classified unless the documents bear a clear indication that they have been declassified by the agency or department that is the original classification authority of the document or the information contained therein (hereinafter, the "original classification authority").

11.      The terms "protected information and/or documents," "protected information" and "protected documents" refer to any document or information deemed by the Court, either upon application by counsel or *sua sponte*, as worthy of special treatment as if the document or information were classified, even if the document or information has not been formally deemed to be classified.

12.      For purposes of this Protective Order, "petitioners' counsel" shall be defined to include an attorney who is employed or retained by or on behalf of a petitioner for purposes of

representing the petitioner in habeas corpus or other litigation in federal court in the United

States, as well as co-counsel, interpreters, translators, paralegals, investigators and all other

personnel or support staff employed or engaged to assist in the litigation.

13.    "Access to classified information" or "access to protected information" shall mean

having access to, reviewing, reading, learning, or otherwise coming to know in any manner any

classified information or protected information.

14.    "Secure area" shall mean a physical facility accredited or approved for the storage,

handling, and control of classified information.

15.    "Unauthorized disclosure of classified information" shall mean any knowing,

willful or negligent action that could reasonably be expected to result in a communication or

physical transfer of classified information to an unauthorized recipient.

<u>Designation of Court Security Officer</u>

16.    The Court designates Christine E. Gunning as Court Security Officer for these

cases, and Joan B. Kendrall, Michael P. Macisso, James P. Londergan, Mary M. Cradlin,

Daniel O. Hartenstine, John P. Molinard, Jennifer Campbell, and Barbara J. Russell as Alternate

Court Security Officers, for the purpose of providing security arrangements necessary to protect

from unauthorized disclosure of any classified documents or information, or protected documents

or information, to be made available in connection with these cases.  Petitioners' counsel shall

seek guidance from the Court Security Officer with regard to appropriate storage, handling,

transmittal, and use of classified documents or information.

<u>Access to Classified Information and Documents</u>

17.     Without authorization from the government, no petitioner or petitioners' counsel shall have access to any classified information involved in these cases unless that person shall first have:

        a.      made a written submission to the Court Security Officer precisely stating the reasons why counsel has a need to know the classified information requested; and

        b.      received the necessary security clearance as determined by the Department of Justice Security Officer; and

        c.      signed the Memorandum of Understanding ("MOU"), attached hereto as Exhibit B, agreeing to comply with the terms of this Protective Order.

        The written submissions that are made by counsel to the Court Security Officer stating the reasons why counsel has a need to know the classified information requested shall be kept confidential by the Court Security Officer and shall not be disclosed to any other counsel or party to these cases unless the Court specifically orders such disclosure.

18.     Petitioners' counsel to be provided access to classified information shall execute the MOU appended to this Protective Order, and shall file executed originals with the Court and submit copies to the Court Security Officer and counsel for the government.  The execution and submission of the MOU is a condition precedent for petitioners' counsel to have access to, or continued access to, classified information for the purposes of this proceeding.

19.     The substitution, departure, or removal of petitioners' counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Order.

6

20.     The government shall arrange for one appropriately approved secure area for the use of petitioners' counsel.  The secure area shall contain a working area that will be supplied with secure office equipment reasonable and necessary to the preparation of the petitioners' case. Expenses for the secure area and its equipment shall be borne by the government.

21.     The Court Security Officer shall establish procedures to ensure that the secure area is accessible to the petitioners' counsel during normal business hours and at other times on reasonable request as approved by the Court Security Officer.  The Court Security Officer shall establish procedures to ensure that the secure area may be maintained and operated in the most efficient manner consistent with the protection of classified information.  The Court Security Officer or Court Security Officer designee may place reasonable and necessary restrictions on the schedule of use of the secure area in order to accommodate appropriate access to all petitioners' counsel in this and other proceedings.

22.     All classified information provided by the government to counsel for petitioners, and all classified information otherwise possessed or maintained by petitioners' counsel, shall be stored, maintained, and used only in the secure area.

23.     No documents containing classified information may be removed from the secure area unless authorized by the Court Security Officer or Court Security Officer designee supervising the area.

24.     Consistent with other provisions of this Protective Order, petitioners' counsel shall have access to the classified information made available to them in the secure area, and shall be allowed to take notes and prepare documents with respect to those materials.

25.     Petitioners' counsel shall not copy or reproduce any classified information in any form, except with the approval of the Court Security Officer or in accordance with the procedures established by the Court Security Officer for the operation of the secure area.

26.     All documents prepared by petitioners or petitioners' counsel that do or may contain classified information (including without limitation, notes taken or memoranda prepared by counsel and pleadings or other documents intended for filing with the Court) shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons who have received an appropriate approval for access to classified information.  Such activities shall take place in the secure area on approved word processing equipment and in accordance with the procedures approved by the Court Security Officer.  All such documents and any associated materials containing classified information (such as notes, memoranda, drafts, copies, typewriter ribbons, magnetic recordings, exhibits) shall be maintained in the secure area unless and until the Court Security Officer advises that those documents or associated materials are unclassified in their entirety.  None of these materials shall be disclosed to counsel for the government unless authorized by the Court, by petitioners' counsel or as otherwise provided in this Protective Order.

27.     Petitioners' counsel shall discuss classified information only within the secure area or in another area authorized by the Court Security Officer, shall not discuss classified information over any standard commercial telephone instrument or office intercommunication system, and shall not transmit or discuss classified information in electronic mail communications of any kind.

28.     The Court Security Officer or Court Security Officer designee shall not reveal to any person the content of any conversations she or he may hear by or among petitioners' counsel, nor reveal the nature of documents being reviewed by them, or the work generated by them, except as necessary to report violations of this Protective Order to the Court or to carry out their duties pursuant to this Order.  In addition, the presence of the Court Security Officer or Court Security Officer designee shall not operate as a waiver of, limit, or otherwise render inapplicable, the attorney-client privilege or work product protections.

8

29.     Petitioners' counsel shall not disclose the contents of any classified documents or information to any person, including counsel in related cases brought by Guantanamo Bay detainees in this or other courts, except those authorized pursuant to this Protective Order, the Court, and counsel for the government with the appropriate clearances and the need to know that information.  Except as otherwise specifically provided by Judge Colleen Kollar-Kotelly in her well-reasoned opinion addressing counsel access procedures regarding petitioners Mohammed Ahmed al Kandari, Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in Al Odah v. United States, 02-CV-0828 (CKK), counsel for petitioners in these cases are presumed to have a "need to know" information both in their own cases and in related cases pending before this Court.  Therefore, and except as provided with respect to the three petitioners in Al Odah mentioned above, counsel for all petitioners in these cases who have satisfied all necessary prerequisites and follow all procedures set forth herein may share and discuss among themselves classified information to the extent necessary for the effective representation of their clients.  Counsel for respondents may challenge the "need to know" presumption on a case-by-case basis for good cause shown.

30.     Petitioners' counsel shall not disclose classified information not provided by petitioner-detainee to that petitioner-detainee.  Should petitioners' counsel desire to disclose classified information not provided by petitioner-detainee to that petitioner-detainee, petitioners' counsel will provide in writing to the privilege review team (See Exhibit A) a request for release clearly stating the classified information they seek to release.  The privilege review team will forward the petitioner counsel's request to the appropriate government agency authorized to declassify the classified information for a determination.  The privilege review team will inform petitioners' counsel of the determination once it is made.

9

31.     No petitioner or counsel for petitioner shall disclose or cause to be disclosed any information known or believed to be classified in connection with any hearing or proceeding in these cases except as otherwise provided herein.

32.     Except as otherwise stated in this paragraph and to ensure the security of the United States of America, at no time, including any period subsequent to the conclusion of the proceedings, shall petitioners' counsel make any public or private statements disclosing any classified information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are classified.  In the event that classified information enters the public domain, however, counsel is not precluded from making private or public statements about the information already in the public domain, but only to the extent that the information is in fact in the public domain.  Counsel may not make any public or private statements revealing personal knowledge from non-public sources regarding the classified or protected status of the information or disclosing that counsel had personal access to classified or protected information confirming, contradicting, or otherwise relating to the information already in the public domain.  In an abundance of caution and to help ensure clarity on this matter, the Court emphasizes that counsel shall not be the source of any classified or protected information entering the public domain.

As stated in more detail in paragraph 49 below, failure to comply with these rules may result in the revocation of counsel's security clearance as well as civil and/or criminal liability.

33.     The foregoing shall not prohibit petitioners' counsel from citing or repeating information in the public domain that petitioners' counsel does not know to be classified information or a classified document, or derived from classified information or a classified document.

34.     All documents containing classified information prepared, possessed or maintained by, or provided to, petitioners' counsel (except filings submitted to the Court and

10

served on counsel for the government), shall remain at all times in the control of the Court
Security Officer for the duration of these cases.  Upon final resolution of these cases, including
all appeals, all such documents shall be destroyed by the Court Security Officer.

<div align="center">Access to Protected Information and Documents</div>

35.     Without authorization from the government or the Court, protected information
shall not be disclosed or distributed to any person or entity other than the following:

a.     petitioners' counsel, provided such individuals have signed the
Acknowledgment, attached hereto as Exhibit C, attesting to the fact that they have read this
Protective Order and agree to be bound by its terms; and

b.     the Court and its support personnel.

36.     The execution of the Acknowledgment is a condition precedent for petitioners'
counsel to have access to, or continued access to, protected information for the purposes of this
proceeding.  A copy of each executed Acknowledgment shall be kept by counsel making the
disclosure until thirty (30) days after the termination of this action, including appeals.

37.     The substitution, departure, or removal of petitioners' counsel from these cases
for any reason shall not release that person from the provisions of this Protective Order or the
Acknowledgment executed in connection with this Protective Order.

38.     Petitioners' counsel shall not disclose the contents of any protected documents or
information to any person, to include counsel in related cases brought by Guantanamo Bay
detainees in this or other courts, except those authorized pursuant to this Protective Order, the
Court, or counsel for the government.  Except as otherwise specifically provided by Judge
Colleen Kollar-Kotelly with respect to counsel for petitioners Mohammed Ahmed al Kandari,
Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in Al Odah v.
United States, 02-CV-0828 (CKK), counsel for petitioners in these coordinated cases may share
protected information with each other but only to the extent that counsel have appropriate

<div align="center">11</div>

security clearances and that all other procedures set forth in this Protective Order are complied with. Petitioners' counsel shall maintain all protected information and documents received through this proceeding in a confidential manner.

39.     Petitioners' counsel shall not disclose protected information not provided by petitioner-detainee to that petitioner-detainee without prior concurrence of counsel for the government or express permission of the Court.

40.     No petitioner or counsel for petitioner shall disclose or cause to be disclosed any information known or believed to be protected in connection with any hearing or proceeding in these cases except as otherwise provided herein.

41.     At no time, including any period subsequent to the conclusion of the proceedings, will petitioners' counsel make any public or private statements disclosing any protected information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are protected.

42.     Protected information shall be used only for purposes directly related to these cases and not for any other litigation or proceeding, except by leave of the Court. Photocopies of documents containing such information shall be made only to the extent necessary to facilitate the permitted use hereunder.

43.     Nothing in this Protective Order shall prevent the government from using for any purpose protected information it provides a party. Nothing in this Protective Order shall entitle another party to protected information.

44.     Supplying protected information to another party does not waive privilege with respect to any person or use outside that permitted by this Protective Order.

45.     Within sixty (60) days of the resolution of these actions, and the termination of any appeals therefrom, all protected documents or information, and any copies thereof, shall be promptly destroyed, provided that the party to whom protected information is disclosed certifies

12

in writing that all designated documents and materials have been destroyed, and further provided that counsel for the government may retain one complete set of any such materials that were presented in any form to the Court.  Any such retained materials shall be placed in an envelope or envelopes marked "Protected Information Subject to Protective Order."  In any subsequent or collateral proceeding, a party may seek discovery of such materials from the government, without prejudice to the government's right to oppose such discovery or its ability to dispose of the materials pursuant to its general document retention policies.

<div align="center">Procedures for Filing Documents</div>

46.     Until further order of this Court, any pleadings or other document filed by a petitioner shall be filed under seal with the Court through the Court Security Officer unless the petitioner has obtained from the Court Security Officer permission, specific to a particular, non-substantive pleading or document (e.g., motions for extensions of time, continuances, scheduling matters, etc.) not containing information that is or may be classified or protected, to file the pleading or document not under seal.  The date and time of physical submission to the Court Security Officer shall be considered the date and time of filing with the Court.  The Court Security Officer shall promptly examine the pleading or document and forward it to the appropriate agencies for their determination whether the pleading or document contains classified information.  If it is determined that the pleading or document contains classified information, the Court Security Officer shall ensure that portion of the document, and only that portion, is marked with the appropriate classification marking and that the document remains under seal.  If it is determined that the pleading or document contains protected information, the Court Security Officer shall ensure that portion of the document, and only that portion, remains under seal.  Any document filed by petitioner that is determined not to contain classified information or protected information, and is not subject to any other restrictions on disclosure, shall immediately be unsealed by the Court Security Officer and placed in the public record.  The Court Security

<div align="center">13</div>

Officer shall immediately deliver under seal to the Court and counsel for the government any
pleading or document to be filed by petitioners that contains classified information or protected
information. The Court shall then direct the clerk to enter on the docket sheet the title of the
pleading or document, the date it was filed, and the fact that it has been filed under seal with the
Court Security Officer.

47.    Any pleading or other document filed by the government containing classified
information shall be filed under seal with the Court through the Court Security Officer. The date
and time of physical submission to the Court Security Officer shall be considered the date and
time of filing with the Court. The Court Security Officer shall serve a copy of any classified
pleadings by the government upon the Petitioner at the secure facility.

48.    Nothing herein shall require the government to disclose classified or protected
information. Nor shall anything herein prohibit the government from submitting classified
information or protected information to the Court *in camera* or *ex parte* in these proceedings, or
entitle petitioners or petitioners' counsel access to such submissions or information. Except for
good cause shown in the filing, the government shall provide counsel for the petitioner or
petitioners with notice served on such counsel on the date of the filing.

<p align="center">Penalties for Unauthorized Disclosure</p>

49.    Any unauthorized disclosure of classified information may constitute violations of
United States criminal laws. In addition, any violation of the terms of this Protective Order shall
be immediately brought to the attention of the Court and may result in a charge of contempt of
Court and possible referral for criminal prosecution. See e.g., Executive Order 12958, as
amended. Any breach of this Protective Order may also result in the termination of access to
classified information and protected information. Persons subject to this Protective Order are
advised that direct or indirect unauthorized disclosure, retention, or negligent handling of
classified documents or information could cause damage to the national security of the United

<p align="center">14</p>

States or may be used to the advantage of an adversary of the United States or against the interests of the United States. Persons subject to this Protective Order are also advised that direct or indirect unauthorized disclosure, retention, or negligent handling of protected documents or information could risk the security of United States government personnel and facilities, and other significant government interests. This Protective Order is to ensure that those authorized to receive classified information and protected information will not divulge this information to anyone who is not authorized to receive it, without prior written authorization from the original classification authority and in conformity with this Protective Order.

50.     The termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this Protective Order.


IT IS SO ORDERED.

November 8, 2004                              _____/s/_____
                                                          JOYCE HENS GREEN
                                                          United States District Judge

15

Exhibit A

EXHIBIT A

## REVISED PROCEDURES FOR COUNSEL ACCESS TO DETAINEES
## AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA

**I.  Applicability**

Except as otherwise stated herein or by other Order issued in the United States District Court for the District of Columbia, the following procedures shall govern counsel access to all detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Base in Guantanamo Bay, Cuba ("GTMO") by counsel for purposes of litigating the cases in which this Order is issued.

These procedures do not apply to counsel who are retained solely to assist in the defense of a detainee in a trial by military commission.  Access by that counsel is covered by the Procedures for Monitoring Communications Between Detainees Subject to Trial by Military Commission and their Defense Counsel Pursuant to Military Commission Order No. 3.

**II.  Definitions**

A.  Communications:  All forms of communication between counsel and a detainee, including oral, written, electronic, or by any other means.

B.  Counsel:  An attorney who is employed or retained by or on behalf of a detainee for purposes of representing the detainee in the United States District Court for the District of Columbia and who is admitted, either generally or pro hac vice, in this Court.  Unless otherwise stated, "counsel" also includes co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.

C.  Detainee:  An individual detained by DoD as an alleged enemy combatant at the U.S. Naval Base in Guantanamo Bay, Cuba.

D.  Privilege Team:  A team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.  If required, the privilege team may include interpreters/translators, provided that such personnel meet these same criteria.

E.  Legal Mail:  Letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly-filed legal documents relating to that representation.

1

EXHIBIT A

## III. Requirements for Access to and Communication with Detainees

A. <u>Security Clearance</u>:

     1.     Counsel must hold a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).

     2.     Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance.  Access will be granted only after DoD verification of the security clearance.

     3.     Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division.

B. <u>Acknowledgment of and Compliance with Access Procedures</u>

     1.     Before being granted access to the detainee, counsel will receive a copy of these procedures.  To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation acknowledging his/her agreement to comply with them.

     2.     This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible.  Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

     3.     The DoD expects that counsel, counsel's staff, and anyone acting on the behalf of the attorney will fully abide by the requirements of this document.  Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these procedures.

     4.     Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C. <u>Verification of Representation</u>

     1.     Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*.  This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as

2

the name of the detainee being represented by the counsel.  Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

2.  Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee.  Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed.  Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

3.  If the counsel withdraws from representation of the detainee or if the representation is otherwise terminated, counsel is required to inform DoD immediately of that change in circumstances.

4.  Counsel must provide DoD with a signed representation stating that to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

D.  Logistics of Counsel Visits

1.  Counsel shall submit to the Department of Justice (DoJ) any request to meet with a detainee.  This request shall specify date(s) of availability for the meeting, the desired duration of the meeting and the language that will be utilized during the meeting with the detainee.  Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting.  Once the request has been approved, DoJ will contact counsel with the date and duration of the meeting.

2.  Legal visits shall take place in a room designated by JTF-Guantanamo.  No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo.  Such approval shall not be unreasonably withheld.

3.  Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba, certain logistical details will need to be coordinated by counsel prior to arrival. This includes arrangements for travel and lodging.  Specific information regarding these issues will be provided by DoJ.

3

EXHIBIT A

4. In order to travel to GTMO, all counsel must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO and a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel). Country and theater clearances require twenty (20) days to process. Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

## IV. Procedures for Correspondence Between Counsel and Detainee

A. <u>Mail Sent by Counsel to Detainee ("Incoming Mail")</u>

1. Counsel shall send incoming legal mail for a detainee to the privilege team at the appropriate address provided by government counsel. Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials. The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Detainee."

2. Each page of legal mail shall be labeled "Attorney-Detainee Materials." No staples, paper clips or any non-paper items shall be included with the documents.

3. Upon receiving legal mail from counsel for delivery to the detainee, the privilege team shall open the envelope or mailer to search the contents for prohibited physical contraband. Within two (2) business days of receipt of legal mail, and assuming no physical contraband is present, the privilege team shall forward the mail to military personnel at GTMO in a sealed envelope marked "Legal Mail Approved by Privilege Team" and clearly indicating the identity of the detainee to which the legal mail is to be delivered. The privilege team shall return to the sender any incoming mail that does not comply with the terms of paragraphs IV.A.1., 2.

4. Within two (2) business days of receipt of legal mail from the privilege team, personnel at GTMO shall deliver the envelope or mailer marked by the privilege team as "Legal Mail Approved by the Privilege Team" to the detainee without opening the envelope or mailer. If counsel desires confirmation that the documents were delivered to the detainee, counsel is responsible for providing a stamped, self-addressed envelope for that purpose. The detainee shall be responsible for mailing any confirmation of delivery to counsel as outgoing legal mail. This method shall be the sole and exclusive means by which confirmation of delivery is provided to counsel.

4

EXHIBIT A

5.      Written correspondence to a detainee not falling within the definition of legal mail shall be sent through the United States Postal Service to the appropriate address provided by government counsel.  Non-legal mail includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee.  These non-privileged communications will be reviewed by military personnel at GTMO under the standard operating procedures for detainee non-legal mail.

6.      Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise by the privilege team or by this Court or another court.  Accordingly, if a counsel's correspondence contains any summary or recitation of or reference to a communication with a detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1R.

7.      Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

B. Mail Sent by Detainee to Counsel ("Outgoing Mail")

1.      Detainees will be provided with paper to prepare communications to counsel.  In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel."  Each envelope shall be labeled with the name of the detainee and the counsel.  Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.      Military personnel will collect the outgoing legal mail within one (1) business day of being notified by the detainee that the communication is prepared for sealing and mailing.

3.      After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will

EXHIBIT A

be annotated with the name of the detainee and the counsel. The envelope will be sealed and mailed in the manner required for classified materials. Within two (2) business days of receipt from the detainee, the communication will be mailed to the appropriate address as provided by government counsel.

4.      Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service. These communications shall be reviewed by military personnel at Guantanamo under the standard operating procedures for detainee non-legal mail.

5.      In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

## V.  Materials Brought Into A Meeting With Detainee And Counsel

A.      Counsel shall bring only legal mail, writing utensils and paper into any meeting with a detainee unless counsel has received prior approval from the Commander, JTF-GTMO. The Commander shall not unreasonably withhold approval for counsel to bring into a meeting with a detainee letters, tapes, or other communications introducing counsel to the detainee, if the government has first reviewed the communication and determined that sharing the communication with the detainee would not threaten the security of the United States.

B.      Written and oral communications with a detainee, including all documents brought into a meeting with a detainee, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

## VI.  Materials Brought Out Of A Meeting With Detainee and Counsel

A.      Upon the completion of each meeting with a detainee or during any break in a meeting session, counsel will give the notes or documents used or produced during the meeting to a designated individual at Guantanamo. These materials will be sealed in the presence of counsel and will be handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

B.      Upon the completion of the counsel's visit to Guantanamo, the notes or documents used or produced during the visit shall be sealed in the presence of

EXHIBIT A

counsel and placed in an envelope labeled as "Attorney-Detainee Meeting Documents–For Delivery to Counsel." The envelope shall be sealed into a larger envelope by military personnel at Guantanamo which shall be marked as "Attorney-Detainee Meeting Documents-For Mail Delivery To Counsel" and shall be annotated with the name of the detainee and the counsel. The envelope shall be sealed and mailed in the manner required for classified materials. Within two (2) business days following the completion of the counsel's visit to Guantanamo, the package shall be mailed to the appropriate address provided by government counsel.

C.      Correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) shall not be handled through this process. If a detainee provides these communications to his counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

## VII. Classification Determination of Detainee Communications

A.      Counsel may submit information learned from a detainee to the privilege team for a determination of its appropriate security classification. Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination. All documents submitted for classification review shall be prepared, handled and treated in the manner required for classified materials, as provided by as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R. No information derived from these submissions shall be disclosed outside the privilege team pursuant to these procedures until after the privilege team has reviewed it for security and intelligence purposes. Absent express consent given by the Court, or except as otherwise provided in this document, the submissions shall not be disclosed to any person involved in the interrogation of a detainee, and no such individual may make any use of those communications whatsoever, nor shall the submissions be disclosed to any Government personnel involved in any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.

B.      Counsel shall send all materials submitted for classification review to the appropriate address to be provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer shall be annotated with the name of the detainee and the counsel. Each page of the document submitted for classification review shall be marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer will be sealed and mailed in the manner required for classified materials.

7

EXHIBIT A

C.    As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials submitted for review.  The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

      1. Seven (7) business days for information that is written in the English language;

      2. Fourteen (14) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

      3. Twenty (20) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

D.    While conducting classification review, the privilege team shall promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo.  In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

E.    If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo.  In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

F.    The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

## VIII.  Telephonic Access to Detainee

A.    Requests for telephonic access to the detainee by counsel or other persons will not normally be approved. Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to Commander, JTF-Guantanamo.

B.    Any telephonic access by counsel will be subject to appropriate security procedures, but shall not include contemporaneous monitoring or recording.

C.    Any telephonic access by persons other than counsel will be subject to appropriate security procedures, including contemporaneous monitoring and recording.

8

EXHIBIT A

## IX.  Counsel's Handling And Dissemination Of Information From Detainee

A.     Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for purposes reasonably related to their representation of that detainee.

B.     Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise.  All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

C.     Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

D.     Counsel may not divulge classified information not learned from the detainee to the detainee.  Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know using a secure means of communication.   Counsel for detainees in the coordinated cases pending in the United States District Court for the District of Columbia are presumed to have a "need to know" information in related cases pending before this Court.  Counsel for respondents in those cases may challenge this presumption on a case-by-case basis for good cause shown.

## X.  JTF-Guantanamo Security Procedures

A.     Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

B.     Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure.  Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt.  Contraband also includes money, stamps, cigarettes, writing instruments, etc.  No items of any kind may be provided to the detainee without the advance approval of the Commander, JTF-Guantanamo.

C.     Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo.  No electronic communication devices are permitted.  All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo.  Should any of these devices be inadvertently taken into a

EXHIBIT A

prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

D.      Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person.

E.      Counsel shall not be permitted to interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, Joint Task Force Guantanamo.  Should permission be unreasonably denied, counsel may seek an Order from this Court granting permission for good cause shown.

F.      Counsel will meet with a detainee in conference facilities provided by GTMO. These facilities are subject to visual monitoring by closed circuit TV for safety and security reasons.  (The only other method of visual observation available is for the door to remain open with military police sitting outside the door.).  No oral communications between counsel and detainee will be heard.

G.      At the conclusion of a meeting with a detainee, counsel and translators/interpreters will again be inspected using a metal detector and, if deemed necessary, by physical inspection of their persons.

10

Exhibit B

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                      |     |                    |
|--------------------------------------|-----|--------------------|
| , *et al.*                           | )   |                    |
|                                      | )   |                    |
|             Petitioners,             | )   |                    |
|                                      | )   |                    |
|         v.                           | )   | Civil Action No.   |
|                                      | )   |                    |
| GEORGE W. BUSH,                      | )   |                    |
|     President of the United          | )   |                    |
|     States, *et al.,*                | )   |                    |
|                                      | )   |                    |
|             Respondents.             | )   |                    |

**MEMORANDUM OF UNDERSTANDING REGARDING ACCESS TO
CLASSIFIED NATIONAL SECURITY INFORMATION**

Having familiarized myself with the applicable statutes, regulations, and orders related to, but not limited to, unauthorized disclosure of classified information, espionage and related offenses; The Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 et seq.; and Executive Order 12958; I understand that I may be the recipient of information and documents that belong to the United States and concern the present and future security of the United States, and that such documents and information together with the methods and sources of collecting it are classified by the United States government.  In consideration for the disclosure of classified information and documents:

(1)  I agree that I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified

EXHIBIT B

documents and information unless specifically authorized in writing to do so by an authorized representative of the United States government, or as expressly authorized by the Protective Order entered in the United States District Court for the District of Columbia in the case captioned _____ v. George W. Bush, No. _____.

(2)  I agree that this Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me.

(3) I have received, read, and understand the Protective Order entered by the United States District Court for the District of Columbia in the case captioned _____ v. George W. Bush, No. _____, and I agree to comply with the provisions thereof.


_____          _____
                                         Date


_____          _____
                                         Date

2

Exhibit C

EXHIBIT C

## **ACKNOWLEDGMENT**

The undersigned hereby acknowledges that he/she has read the Protective Order entered in the United States District Court for the District of Columbia in the case captioned _____ v. George W. Bush, No. _____, understands its terms, and agrees to be bound by each of those terms. Specifically, and without limitation, the undersigned agrees not to use or disclose any protected information or documents made available to him/her other than as provided by the Protective Order. The undersigned acknowledges that his/her duties under the Protective Order shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of sanctions by the Court.


DATED: _____    BY: _____
                            (type or print name)


                       SIGNED: _____

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                               )    **Civil Action Nos.**
                               )    **02-CV-0299 (CKK), 02-CV-0828 (CKK),**
                               )    **02-CV-1130 (CKK), 04-CV-1135 (ESH),**
                               )    **04-CV-1136 (JDB), 04-CV-1137 (RMC),**
***In re* Guantanamo Detainee Cases**     )    **04-CV-1142 (RJL), 04-CV-1144 (RWR),**
                               )    **04-CV-1164 (RBW), 04-CV-1166 (RJL),**
                               )    **04-CV-1194 (HHK), 04-CV-1227 (RBW),**
                               )    **04-CV-1254 (HHK), 04-CV-1519 (JR)**
_____)

## ORDER ADDRESSING DESIGNATION PROCEDURES
## FOR "PROTECTED INFORMATION"

On November 8, 2004, counsel for respondents in these coordinated cases filed a motion requesting the Court to designate as "protected information" the unclassified information contained in the respondents' factual returns to the petitions for writs of habeas corpus that is not filed on the public record. Counsel for certain petitioners filed responses stating that they could not take a position on the respondents' motion until they or a designated representative had an opportunity to review the material that the respondents seek to have declared "protected."

In the interest of the efficient administration of these proceedings, it is hereby

ORDERED that should counsel for respondents in these consolidated cases wish to have the Court deem any information "protected" pursuant to the Court's November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, counsel for respondents shall disclose the information to qualified counsel for petitioners and attempt to reach an agreement regarding the designation of the information prior to filing a motion with the Court. "Qualified counsel" for petitioners means those counsel who have satisfied the necessary prerequisites set forth in the Amended

Protective Order for the viewing of protected information.

It is FURTHER ORDERED that counsel for petitioners shall treat such disclosed information as "protected" unless and until the Court rules that the information should not be designated as "protected."

It is FURTHER ORDERED that counsel for petitioners shall make their best efforts to designate one attorney as a representative to review the information on their behalf and to negotiate with counsel for respondents prior to the filing of any motions to deem information "protected."

With respect to the November 8, 2004 Motion to Designate as "Protected Information" Unclassified Information in Factual Returns to Petitions for Writ of Habeas Corpus That is Not Filed on the Public Record, it is hereby

ORDERED that counsel for respondents shall deliver the information they seek to be deemed "protected" to the Court Security Officer at the designated secured facility on or before November 17, 2004.

It is FURTHER ORDERED that the Court Security Officer shall notify counsel for the petitioners of the location of the secured facility on or before November 12, 2004.

It is FURTHER ORDERED that petitioners' counsel shall review at the secured facility the information at issue and shall notify the Court of their position with respect to the designation of the information on or before November 19, 2004.

IT IS SO ORDERED.
November 10, 2004                                    _____/s/_____
                                                                  JOYCE HENS GREEN
                                                              United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ) | **Civil Action Nos.** |
| ) | **02-CV-0299 (CKK), 02-CV-0828 (CKK),** |
| ) | **02-CV-1130 (CKK), 04-CV-1135 (ESH),** |
| ) | **04-CV-1136 (JDB), 04-CV-1137 (RMC),** |
| *In re* **Guantanamo Detainee Cases**   ) | **04-CV-1144 (RWR), 04-CV-1164 (RBW),** |
| ) | **04-CV-1194 (HHK), 04-CV-1227 (RBW),** |
| ) | **04-CV-1254 (HHK), 04-CV-1897 (RMC)** |
| ) | |
| ) | |
| ) | |
| ) | |

## ORDER SUPPLEMENTING AND AMENDING FILING PROCEDURES CONTAINED IN NOVEMBER 8, 2004 AMENDED PROTECTIVE ORDER

In its November 8, 2004 Amended Protective Order, the Court set forth procedures for the filing of documents by counsel in these coordinated cases. Paragraph 46 governs the filing of documents by counsel for the petitioners and requires that all filings be first submitted under seal to the Court Security Officer ("CSO") to determine whether they contain classified or protected information. If the CSO, in consultation with the appropriate agency, concludes that a particular filing does not contain any classified or protected information, ¶ 46 requires the unsealing of the document by the CSO and the filing of the document in the public record. If the CSO, in consultation with the appropriate agency, concludes that a particular filing does contain classified or protected information, that information is to remain under seal and the unclassified and unprotected portions of the filing, if any, are to be placed in the public record. Paragraph 47 governs the filing of classified materials by counsel for the respondents and requires counsel to submit classified filings under seal to the Court through the CSO.

It has recently come to the Court's attention that some confusion and certain difficulties have arisen with respect to the filing of documents containing classified or protected information. Most of the difficulties have arisen as a result of the nature of the Court's CM/ECF electronic filing system. To clarify and, hopefully, to improve the filing system, it is hereby

ORDERED that the "Procedures For Filing Documents" contained on pages 13 through 14 of the November 8, 2004 Amended Protective Order are modified and supplemented as follows:

All documents filed by a petitioner shall be filed under seal with the Court through the Court Security Officer for determination by the appropriate agency as to whether the documents contain classified or protected information. At the time of making a submission to the CSO, the attorney shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that a submission has been made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified or protected information. It is the Court's understanding that the CM/ECF system requires counsel to attach a document to any entry made by them on the system. Accordingly, the document to be attached to the Notice of Filing in the CM/ECF system shall be a one page submission repeating in general terms the nature of the filing without disclosing any potentially classified or protected information and disclosing the date and time the document was delivered to the CSO for her review.

In the event that the CSO informs counsel for a petitioner that a proposed filing does not contain any classified or protected information, counsel shall then promptly file the full submission in the CM/ECF system and counsel shall make specific reference to the earlier docket

2

entry notifying the Court that the document had been submitted to the CSO for review.  The docket entry description shall also state that the CSO has approved of the public filing of the document.  The underlying document filed in the CM/ECF system shall contain a notation in the upper right hand corner of the first page stating "PREVIOUSLY FILED WITH CSO AND CLEARED FOR PUBLIC FILING."

In the event that the CSO informs counsel for a petitioner that a proposed filing does in fact contain some or all classified or protected information, counsel shall then promptly file in the CM/ECF system a version of the document suitable for public viewing.  Unless an entire document is deemed classified or protected, a "version of the document suitable for public viewing" shall mean a document in which the portions of the document containing classified or protected information are redacted.  Such document shall contain a notification in the upper right hand corner of the first page stating "REDACTED VERSION FOR PUBLIC FILING CLEARED BY CSO."   In the event an entire document is deemed classified or protected, a "version of the document suitable for public viewing" shall mean a one page "half sheet" containing the caption of the case, a version of the title of the document that does not disclose classified or protected information, and a brief statement that the CSO has informed counsel that the entire document is classified or protected.  The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document had been submitted to the CSO for review.

Any pleading or other document filed by counsel for the respondents containing classified or protected information shall be filed under seal with the Court through the CSO.  In addition,

counsel for respondents shall file in the CM/ECF system a version of the document suitable for

public viewing as that phrase is defined in the preceding paragraph.


IT IS SO ORDERED.

December 13, 2004                                    _____/s/_____
                                                              JOYCE HENS GREEN
                                                              United States District Judge

# EXHIBIT B

# Petitioners' Exhibit B – Pending Motions by Petitioners

(where motions are amenable to common resolution by the Coordinating Judge, this is indicated in the "notes" column)

| Case Name | Case No. | Judge | Petitioner Name | ISN | Pending Motions | Notes |
|---|---|---|---|---|---|---|
| Al Odah v. United States | 02-cv-0828 | Kollar-Kotelly | | | (1) Petitioners' Motion for Sanctions | Docket # 293, July 21, 2006. Motion is fully briefed and ripe for decision. Appropriate for common resolution by Judge Hogan. |
| Al Odah v. United States | 02-cv-0828 | Kollar-Kotelly | | | (2) Petitioners' Emergency Motion for Injunction | Docket # 335, July 2, 2008. Motion is fully briefed and ripe for expedited decision at earliest possible time. |
| Al Odah v. United States | 02-cv-0828 | Kollar-Kotelly | | | (3) Petitioners' Motion to Substitute Parties | Docket # 346, July 10, 2008. Motion will be ripe for decision after government's time to oppose expires on July 24, 2008. Potentially appropriate for common resolution by Judge Hogan. |
| Anam v. Bush | 04-cv-1194 | Kennedy | | | (1) Motion for Discovery | Docket # 90, January 10, 2005. Fully briefed (see docket # 91, 93). Potentially appropriate for common resolution by Judge Hogan. |
| Anam v. Bush | 04-cv-1194 | Kennedy | | | (2) Motion to Compel Respondents to Report on the Destruction of Relevant Evidence and for Amended Preservation Order | Docket # 192. Motion to Compel Respondents to Report on the Destruction of Relevant Evidence and for Amended Preservation Order, filed on February 15, 2008 with the CSO. Fully briefed, but none of Petitioners' filings with respect to this motion have been cleared and so are unavailable on the docket. It is appropriate for the court to address this motion now.<br><br>While the motion addresses factual circumstances specific to movants, it is amenable for common resolution by Judge Hogan insofar as it seeks a report and preservation order that would be appropriate in all habeas cases. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Paracha v. Bush | 04-cv-2022 | Friedman | Saifullah Paracha | 1094 | (1) Motion for discovery | Docket # 161, July 5, 2008. The motion for discovery is docket # 4 in the consolidated case, # 161 in petitioner's individual case. |
| Paracha v. Bush | 04-cv-2022 | Friedman | Saifullah Paracha | 1094 | (2) Motion for summary judgment | Docket # 28; Docket #90.  The motion for summary judgment was docket # 28.  The government opposed February 18, 2005, docket # 39, 40, and 41.  The case was stayed March 23, 2005.  Petitioner moved to set aside the stay and grant the summary judgment on July 7, 2006, docket # 90, and the government opposed July 25, 2006, docket # 96. |
| Al-Marri v. Bush | 04-cv-2035 | Kessler | Jarallah al-Marri | 334 | (1) Motion for leave to take discovery and for a preservation order | Docket # 12, January 6, 2005. |
| Al-Marri v. Bush | 04-cv-2035 | Kessler | Jarallah al-Marri | 334 | (2) Motion to compel Respondents to report on their compliance with the Court's Preservation Order of March 7, 2005 and their obligation to preserve potentially relevant evidence | Docket # 76, January 9, 2008. |
| Zemiri v. Bush | 04-cv-2046 | Kollar-Kotelly | Ahcene Zemiri | 533 | Motion to lift stay | Docket # 65, June 19, 2008.  Appropriate for common resolution by Judge Hogan. |
| Deghayes et al., v. Bush | 04-cv-2215 | Collyer | Shaker Abdurraheem Aamer | 239 | Motion for preliminary injunction challenging continuing solitary confinement under brutal conditions. | Docket # 58, September 26, 2006. (The Court did not rule on the motion after Respondents moved to dismiss on jurisdictional grounds.) |
| Abdullah v. Bush | 05-cv-0023 | Roberts | | | (1) Motion for Access to Declaration of Wendy M. Hilton | Docket # 93, March 27, 2008.  This motion is fully briefed, and can be decided immediately. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Abdullah v. Bush | 05-cv-0023 | Roberts | | | (2) Motion for Status Conference | Docket # 100, June 30, 2008.  This motion should be decided immediately.  Petitioner proposes to discuss and schedule necessary case-specific discovery. |
| Ameziane v. Bush | 05-cv-0392 | Huvelle | Djamel Ameziane | 310 | Motion to Lift Stay and to Set Status Conference | Docket # 45, June 17, 2008.  Ripe for immediate decision. Appropriate for common resolution by Judge Hogan. |
| Al Oshan v. Bush | 05-cv-520 | Urbina | | | Motion to Lift Stay and Schedule a Status Conference | Docket # 117, June 18, 2008. Ripe for immediate decision. Appropriate for common resolution by Judge Hogan. |
| Mohamedou Ould Salahi v. Bush | 05-cv-0569 | Robertson | Mohammedou Ould Salahi | 760 | (Petitioner's) Emergency Motion to Reinstate Habeas Action and Request for Status Conference | Docket # 90, June 23, 2008.  This motion should be granted in light of DOJ's non-opposition at this time. Appropriate for common resolution by Judge Hogan. |
| Hamlily v. Bush | 05-cv-0763 | Bates | Adel Hamlily | 1452 | (1) Petitioner's Motion to Order Respondents to Provide a Factual Return | Docket # 34, December 15, 2006. |
| Hamlily v. Bush | 05-cv-0763 | Bates | Adel Hamlily | 1452 | (2)  Petitioner's Motion to Lift Stay and Set a Status Conference | Docket # 56, July 8, 2008. Appropriate for common resolution by Judge Hogan. |
| Basardh v. Bush | 05-cv-0889 | Huvelle | Yasin Muhammed Basardh | 252 | Petitioner's Motion for Stay-and-Abey Order | Docket # 35, April 25, 2007.  Motion should be dismissed in light of *Boumediene*. Appropriate for common resolution by Judge Hogan. |
| Al-Khalaqi v. Bush | 05-cv-0999 | Walton | Asim Ben Thabit Al-Khalaqi | 152 | Motion seeking immediate issuance of the habeas writ or alternatively for an order to show cause why the writ should not issue | Docket # 16, December 29, 2005. In his status report, Petitioner sought 30 day notice and has renewed this motion seeking immediate issuance of the habeas writ or alternatively for an order to show cause why the writ should not issue. That motion is now pending. |
| Zalita v. Bush | 05-cv-1220 | Urbina | Abu Abdul Rauf Zalita | | Motion for Inquiry Concerning Destruction of Evidence Related to CIA Detainee Interrogations evidence | Docket # 82, January 15, 2008. Fully briefed and pending.  Ripe for immediate decision. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Sadkhan v. Bush | 05-cv-1487 | Collyer | Jawad Jabbar Sadkhan Al-Sahlani | 433 | Emergency Motion to Vacate the Stay, Set Dates for Scheduling Conference and Evidentiary Hearing, and for Other Relief | Docket #64, June 16, 2008. Fully briefed.<br><br>Lifting of stay appropriate for common resolution by Judge Hogan. |
| Faraj v. Bush | 05-cv-1490 | Friedman | Abdl Hadi Omar Mahmoud Faraj | 329 | Motion to lift the stay and schedule a status conference | Docket #75, June 17, 2008. The motion was filed on June 16, 2008, and is ready for decision. Stay should be lifted. Appropriate for common resolution by Judge Hogan. |
| Shafiiq v. Bush | 05-cv-1506 | Collyer | Shafiiq (Aka Sufyian Barhoumi) | | Motion for Reconsideration, Setting Status Conference, Requiring Answer, Converting to Direct Petition, and Entering Protective Order | Docket #64, June 25, 2008. Was dismissed on jurisdictional grounds; remanded by D.C. Circuit.<br><br>Government does not oppose reinstatement. Appropriate for common resolution by Judge Hogan. |
| Idris v. Bush | 05-cv-1555 | Robertson | Ibrahim Osman Ibrahim Idris | 36 | Motion to Vacate Dismissal and Motion to Set a Scheduling Conference | Docket # 75, July 2, 2008. Government has consented to reinstatement. Appropriate for common resolution by Judge Hogan. |
| Ali Ahmed v. Bush | 05-cv-1678 | Kessler | Alla Ali Bin Ali Ahmed | 692 | Motion to Stay and Hold Habeas Action pending Supreme Court deliberations | Docket # 51, June 7, 2007. Motion should be dismissed in light of *Boumediene*. Appropriate for common resolution by Judge Hogan. |
| Al-Qahtani v. Bush | 05-cv-1971 | Collyer | Mohammed Al-Qahtani | 63 | Consent Motion to Reopen | Docket # 47, June 16, 2008. Al-Qahtani is also requesting that his case be transferred back to Judge Collyer for resolution of factual issues concerning his interrogations. Appropriate for common resolution by Judge Hogan. |
| Alkhemisi v. Bush | 05-cv-1983 | Urbina | Ismail Alkhemisi/Bakush | 708 | Motion to lift stay | Docket # 52, June 30, 2008. Appropriate for common resolution by Judge Hogan. |
| Ali al Jayfi v. Bush | 05-cv-2104 | Walton | Shamrany | 171 | Motion to Lift Stay, for Production of Factual Returns, and to Set Status Conference | Docket # 48, June 30, 2008. Appropriate for common resolution by Judge Hogan. |

| Ali al Jayfi v. Bush | 05-cv-2104 | Walton | Bahlool | 39 | Motion to Lift Stay, for Production of Factual Returns, and to Set Status Conference | Docket # 48, June 30, 2008. Appropriate for common resolution by Judge Hogan. |
|---|---|---|---|---|---|---|
| Ali al Jayfi v. Bush | 05-cv-2104 | Walton | Hussain | 690 | Motion to Lift Stay, for Production of Factual Returns, and to Set Status Conference | Docket # 48, June 30, 2008. Appropriate for common resolution by Judge Hogan. |
| Jamolivich v. Bush | 05-cv-2112 | Walton | Jabbarov Oybek Jamolivich | 452 | Motion to Dismiss Habeas Petition as Duplicative | Docket # 29, May 16, 2008. Amendable to immediate resolution by Judge Hogan. |
| al-Mudafari v. Bush | 05-cv-2185 | Robertson | Abdu Al Qader Hussain Al-Mudafari | 40 | Motion to Vacate Dismissal and Motion to Set a Scheduling Conference | Docket # 64, July 2, 2008. Government has consented to reinstatement. Appropriate for common resolution by Judge Hogan. |
| Al-Shimrani v. Bush | 05-cv-2249 | Collyer | Mohammed Abdul Rahman Al-Shimrani | 195 | Motion to Modify the Memorandum Order Allowing a Filter Team Time to address Motion | Docket # 34, September 26, 2006. Petitioner requests granting motion as soon as possible. Motion is not amenable to resolution by Judge Hogan, and should be referred to Judge Robertson, who issued the order in question. |
| Zadran v. Bush | 05-cv-2367 | Roberts | Abdullah Wazir Zadran | 967 | Motion to Reopen | Docket # 87, June 17, 2008. Post-*Boumediene* Motion to reopen is fully briefed and pending. (Case was administratively closed pending *Boumediene*.) Appropriate for common resolution by Judge Hogan. |
| Awad v. Bush | 05-cv-2379 | Robertson | Adham Mohammed Ali Awad | 88 | Motion to Lift the Stay and to Compel Respondents to Provide Factual Returns and to Provide Counsel Access to Petitioner's Medical Records | Docket # 32, September 22, 2006. Motion has been fully briefed by both parties and is ready for a ruling. Counsel would have no objections to Judge Hogan ruling on this Motion. |
| Said v. Bush | 05-cv-2384 | Roberts | Saad Al Qahtani | 200 | Motion to Preserve Remaining Exculpatory Evidence [relating to destroyed CIA videotapes] | Docket # 79, June 1, 2008. Fully briefed since 2/19/08 (Docket # 80, 81, 85, 86). This motion is ready for immediate decision by this Court. |

5

| Said v. Bush | 05-cv-2384 | Roberts | Saad Al Qahtani | 200 | Emergency motion to lift stay and schedule a status conference | Docket # 94, June 17, 2008. Appropriate for common resolution by Judge Hogan. |
|---|---|---|---|---|---|---|
| Mohammon v. Bush | 05-cv-2386 | Urbina | Abdul-Rahman Sulaeiman | 223 | (1) June 16, 2008, Emergency Motion for a habeas corpus hearing | Docket # 449, June 18, 2008. Motion filed June 16, 2008.  Fully briefed and pending before the Court. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Abdul-Rahman Sulaeiman | 223 | (2) Emergency Motion for Order to Show Cause requesting that the Court order Respondents to provide in writing within seven days or within a reasonable time all of their reasons for continuing to hold Petitioner at the Guantánamo Bay Naval Station, including and in particular, classified information from Petitioner's CSRT and ARB to be deposited at the secure facility | Docket # 466, June 24, 2008.  Fully briefed and pending before the Court. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Abdal Razak Ali | 685 | (3) Petitioner's Motion for Factual Return | Motion was filed on December 4, 2006 and is fully briefed (see docket entries 226, 235, 237, 238, 242, 280, 281, 286, 308). |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mohammon v. Bush | 05-cv-2386 | Urbina | Abdal Razak Ali | 685 | (4) Bill of Costs related to District Court's Order of September 20, 2006 (docket # 169) ordering the government to pay the reasonable costs, Document 509 (filed 07/18/2008) related to the Government's purposeful interference with counsel's visit with Ali (Show Cause hearing on August 24, 2006, status hearing on September 8 2006) | Pursuant to Judge Walton's order, a Bill of Costs was filed by Petitioners counsel and is fully briefed with a proposed draft order at docket 162. (Documents related to the Bill of Costs can be found at docket entries 154, 155, 156, 158, 174, 186, 195, 198.) |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Jabbarov Oybek Jamolivich | 452 | (5) Emergency Motion for Unredacted Return | Docket # 306, January 24, 2007. Emergency Motion for Unredacted Return. Amendable to immediate resolution by Judge Hogan. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Abu Hijazi | 49 | (6) Motion for Factual Returns | Docket # 329, February 2, 2007. Judge Walton did not decide the motions because he had just administratively closed the case. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Mouhammad | 330 | (7) Motion for Factual Returns | Docket # 329, February 2, 2007. Judge Walton did not decide the motions because he had just administratively closed the case. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Abdulayev | 257 | (8) Motion for a preliminary injunction | Docket # 412. March 7, 2008. Motion for a preliminary injunction prohibiting the government from repatriating Petitioner to Tajikistan has been held in abeyance by Judge Walton until such time as the government provides counsel with 30 days notice of transfer. Since no such notice has been provided, that motion is not ripe. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mohammon v. Bush | 05-cv-2386 | Urbina | Maher El Falesteny | 519 | (9) Motion for Preliminary Injunction Ordering Respondents to Cease Violations of the Geneva Conventions and to Treat Petitioner El Falesteny as a Prisoner of War | Docket # 446, June 12, 2008.  The government has refused to oppose this motion on the merits.  Prior to *Boumediene*, it raised only a jurisdictional objection, and in the weeks since then, it has simply declined to respond.  The Court can treat the motion as conceded.  In the alternative, it should order a response filed forthwith. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Ali Al Kazmi | 172 | (10) Emergency Motion to compel disclosure of records to ensure access | Docket # 352, March 14, 2007. Fully briefed. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | Abd al Zaher | 89 | (11) Motion for Reconsideration of Motion to Order Access to Counsel | Docket # 423, March 21, 2008.  Fully briefed.  (See docket # 423, 426, 427.)  Ripe for decision. |
| Taher v. Bush | 06-cv-1684 | Kessler | Mohammed Ahmed Taher / Yasser Ali Abdulla Salemi | 679 | Motion to lift stay and for status conference | Docket # 32, June 17, 2008.  Ripe for immediate decision.  Appropriate for common resolution by Judge Hogan. |
| Suliman v. Bush | 06-cv-1758 | Collyer | Faiz Ahmed Yahia Suliman | 153 | Motion to Reinstate | Docket # 28, July 1, 2008. Filed after *Boumediene* but before Hogan's consolidation order. Appropriate for common resolution by Judge Hogan. |
| Adbessasalam v. Bush | 06-cv-1761 | Huvelle | Achraf Salim Abdessalam | 263 | (1) Emergency Motion to schedule a habeas corpus hearing | Docket # 22, June 16, 2008.  Motion is fully briefed and pending before the Court. |
| Adbessasalam v. Bush | 06-cv-1761 | Huvelle | Achraf Salim Abdessalam | 263 | (2) Emergency Motion to Show Cause | Docket # 25, June 24, 2008.  Motion is fully briefed and pending before the Court. |
| Kiyemba v. Bush | 05-cv-1509 | Urbina | | | Motion to Use CSRT Records Provided in DTA Action in This Case | Consolidated Uighur case. Not yet docketed. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mamet v. Bush | 05-cv-1602 | Urbina | | | Motion to Use CSRT Records Provided in DTA Action in This Case | Consolidated Uighur case.  Not yet docketed. |
| Kabir v. Bush | 05-cv-1704 | Urbina | | | Motion to Use CSRT Records Provided in DTA Action in This Case | Consolidated Uighur case.  Not yet docketed. |
| Razakah v. Bush | 05-cv-2370 | Urbina | | | Motion to Use CSRT Records Provided in DTA Action in This Case | Consolidated Uighur case.  Not yet docketed. |
| Mohammon v. Bush | 05-cv-2386 | Urbina | | | Motion to Use CSRT Records Provided in DTA Action in This Case | Consolidated Uighur case.  Not yet docketed. |
| Thabid v. Bush | 05-cv-2398 | Urbina | | | Motion to Use CSRT Records Provided in DTA Action in This Case | Consolidated Uighur case.  Not yet docketed. |

# RESPONDENTS' EXHIBITS

# EXHIBIT 1

<div align="center">Procedures For Filing Documents</div>

Unclassified Filings By Petitioner

     1.     Until further order of this court, any pleading or other document filed by petitioner that petitioner's counsel does not believe contains classified information and has no reason to believe contains classified information is authorized for direct filing in the CM/ECF system consistent with the regular electronic filing practices of this Court. *See* Local Civil Rule 5.4. Presumptively classified information that petitioner's counsel has learned from petitioner, *see* Revised Procedures For Counsel Access To Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba §§ IV.A.6, IX.B, but has not been determined to be unclassified, shall not be filed in the CM/ECF system. Presumptively classified information shall be filed pursuant to the procedures specified in paragraph 2 below.

Classified Filings By Petitioner

     2.     Any pleading or other document filed by petitioner that petitioner's counsel knows or has reason to believe contains classified information, or is uncertain whether the document contains classified information, shall be filed under seal with the Court Security Officers ("CSO"). The document must be marked with the appropriate classification marking (*e.g.*, "SECRET"). The time of physical submission to the Court Security Officers shall be considered the date and time of filing. At the time of making a submission to the Court Security Officer, petitioner's counsel shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that a submission has been made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified information.

     A.     Upon receipt, the CSO will then deliver to the Court and counsel for respondents any pleading or other document filed by petitioner that may contain classified information. The CSO will forward the document to the appropriate government agencies and departments for their determination as to whether the pleading or other document contains classified information. To facilitate this review, petitioner's counsel shall identify each paragraph of the document that counsel believes may contain classified information by marking each paragraph with an appropriate classification marking or otherwise specifically identifying such paragraphs. If, following review by the appropriate government agencies and departments, it is determined that the pleading or other document contains classified, the CSO must ensure that the document is marked with the appropriate classification marking and that the document remains under seal. The CSO will work with the appropriate government agencies or departments to prepare a redacted version of the pleading or other document appropriate for filing on the public record. Counsel shall then file the redacted version of the document in the CM/ECF system with a notation in the upper right hand corner of the first page stating "REDACTED VERSION FOR PUBLIC FILING CLEARED BY CSO." The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document had been submitted to the CSO for review.

     B.     In the event an entire document is deemed classified, petitioner's counsel

shall file a notice in the CM/ECF system listing the caption of the case, a version of the title of the document that does not disclose classified or protected information, and a brief statement that the CSO has informed counsel that the entire document is classified. The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document had been submitted to the CSO for review.

   C. If it is determined that the pleading or other document does not contain classified, counsel shall then file the full submission in the CM/ECF system and counsel shall make specific reference to the earlier docket entry notifying the Court that the document had been submitted to the CSO for review. The docket entry description shall also state that the CSO has approved of the public filing of the document. The underlying document filed in the CM/ECF system shall contain a notation in the upper right hand corner of the first page stating "PREVIOUSLY FILED WITH CSO AND CLEARED FOR PUBLIC FILING."

<u>Classified Filings By Respondents</u>

  3. Any pleading or other document filed by counsel for the respondents containing classified shall be filed under seal with the Court through the CSO. The time of physical submission to the Court Security Officers shall be considered the date and time of filing. The Court Security Officer shall serve a copy of any classified pleading or document upon petitioner's counsel at the secure facility. At the time of making a submission to the Court Security Officer, respondents shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that a submission has been made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified information. Counsel for respondents shall file in the CM/ECF system a version of the pleading or document appropriate for filing on the public record, consistent with the procedures outlined in paragraphs 2.A-C.

<u>Protected Information Filings By Petitioner And Respondents</u>

  4.A. The presence, or potential presence, of protected information in any pleading or document that is governed by paragraph 2 or paragraph 3, above, shall not affect the method of filing such a pleading or document; it shall be governed by paragraph 2 or 3, as applicable. Any pleading or other document that contains, or petitioner's counsel or respondents have a reason to believe contains, or petitioner's counsel is uncertain as to whether it contains, protected information, but does not contain classified information, shall be filed under seal pursuant to Local Civil Rule 5.1(j). At the time of the submission of a filing containing protected but not classified information, the party shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that a protected information submission has been made and specifying in general terms the nature of the filing without disclosing any potentially protected information. Counsel for the party submitting the protected information shall file in the CM/ECF system a version of the pleading or document appropriate for filing on the public record, consistent with the procedures outlined in paragraphs 2.A-C.

4.B.     This order shall constitute authorization for petitioner and respondents to file protected information under seal.  No motion to seal is required at the time of submission of the pleading or document to the Clerk's Office. Procedures for designation of protected information shall be governed by the Court's November 11, 2004 Order ("Order Addressing Designation Procedures For 'Protected Information'").

### Disclosure of Protected Or Classified Information On The Public Record

5.     In the event respondents believe that a party has disclosed classified or protected information on the public docket, respondents shall notify the Court Security Officer, who shall work with the Clerk's Office to remove the filing from the public docket.  A copy of the filing shall then be lodged with the Court Security Officer and treated according to section 2.B or 2.C of this order.  Nothing herein shall limit respondents authority to take necessary remedial action to ensure the protection of the classified or protected information.

# EXHIBIT 2

**Exhibit to Part B** of Joint Status Report Dated July 21, 2008

Petitioners in *Mohammon v. Bush*, No. 05-CV-2386 (RBW), Who Are Identified as Detainees at Guantánamo Bay;
Who Do Not Have Duplicate Petitions for Writs of Habeas Corpus Pending Before the District Court;
and Who Have Not Been Released or Transferred; or Petitioners About Whom These Issues Are Disputed

| | Petitioner | Petitioner's Internment Serial Number (ISN) | Citation to Petition | Petitioner's Citizenship | Amended (Habeas) Protective Order Entered? | Petitioner's Status |
|---|---|---|---|---|---|---|
| 1. | Abd Al Zaher | 89 | ¶ 25 | Azerbaijan | Yes | |
| 2. | Abdurahman LNU | 441 | ¶ 160 | Yemen | Yes | Petitioner has voluntarily withdrawn duplicate petition in *Al Halmandy v. Bush*, No. 05-2385 (RMU) |
| 3. | Adel LNU | 584 | ¶ 232 | Turkestan (Uighur) | Yes | |
| 4. | Ahmed Omar | 30 | ¶ 318 | Yemen | Yes | Petitioner has duplicate petition in *Al Hakimi v. Bush*, No. 08-1111 (EGS) |
| 5. | Ali LNU | 455 | ¶ 156 | Uzbekistan | Yes | |
| 6. | Edress LNU | 35 | ¶ 107 | Yemen | Yes | |
| 7. | Mohammed Ahmed Saeed Hidar | 498 | ¶ 260 | Yemen | Yes | |
| 8. | Sharaf Al Sanani | 170 | ¶ 109 | Yemen | Yes | |
| 9. | Alkhadr Abdullah Al Yafie | 34 | ¶ 266 | Yemen | Yes | Petitioner has voluntarily withdrawn duplicate petition in *Al Yafie v. Bush*, No. 05-2399 (RJL) |
| 10. | Saif Ullah | 46 | ¶ 146 | Tunisia | Yes | Petitioner has voluntarily withdrawn duplicate petition in *Al Halmandy v. Bush*, No. 05-2385 (RMU) |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11. | Abdul-rahman Abdo Abdulghaith Sulaiman | 223 | ¶ 250 | Yemen | Yes | |
| 12. | Abdurahman LNU | 281 | ¶ 230 | Turkestan (Uighur) | Yes | |
| 13. | Abu Rawda | 326 | ¶ 214 | Syria | Yes | |
| 14. | Jabbarov Oybek Jamolovich | 452 | ¶ 330 | Uzbekistan | Yes | Petitioner has moved to dismiss duplicate petition in *Jamolivich v. Bush*, No. 05-2112 (RBW); Respondents do not object to dismissal of 05-2112. |
| 15. | Adil LNU | 148 | ¶ 150 | Tunisia | Yes | |
| 16. | Mohammed Abdullah Taha Mattan | 684 | ¶ 13 | Palestine | Yes | |
| 17. | Samir LNU | 707 | ¶ 73 | Sudan | Yes | Petitioner has voluntarily withdrawn duplicate petition in *Al Halmandy v. Bush*, No. 05-2385 (RMU); Petitioner charged by military commission |
| 18. | Tofiq Nasser Awadh Al Bihani | 893 | ¶ 262 | Yemen | Yes | Petitioner has voluntarily withdrawn duplicate petition in *Al Yafie v. Bush*, No. 05-2399 (RJL) |
| 19. | Shargowi LNU | 1457 | ¶ 170 | Yemen | Yes | Petitioner has voluntarily withdrawn duplicate petition in *Al Halmandy v. Bush*, No. 05-2385 (RMU) |
| 20. | Mohammed Al Palestini | 049 | ¶ 15 | Palestine | Yes | |
| 21. | Abdullah Bo Omer Hamza Yoyej | 257 | ¶ 246 | Tajikistan | Yes | |
| 22. | Bilal LNU | 330 | ¶ 144 | Syria | Yes | |
| 23. | Mustafa Al Shamili | 434 | ¶ 95 | Yemen | Yes | |
| 24. | Maher El Falesteny | 519 | ¶ 119 | Palestine | Yes | |
| 25. | Abdal Razak Ali | 685 | ¶ 288 | Algeria | Yes | |

| | | | | | |
|---|---|---|---|---|---|
| 26. | Abdulaziz LNU | 687 | ¶ 168 | Saudi Arabia | Yes |
| 27. | Mohammed Ahmed Slam Al-Khateeb | 689 | ¶ 252 | Yemen | Yes |
| 28. | Jamil Ahmad Saeed | 728 | ¶ 256 | Yemen | Yes |
| 29. | Abdul Aziz Naji | 744 | ¶ 270 | Algeria | Yes |
| 30. | Sanad Ali Alkaliemi | 1453 | ¶ 172 | Yemen | Yes |

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— x
:
**IN RE:** :
:
**GUANTÁNAMO BAY** : Misc. No. 08-442 (TFH)
**DETAINEE LITIGATION** :
:
———————————————————— x
:
AL HALMANDY, *et al.*, :
:
Petitioners, :
:
v. : No. 05-CV-2385 (RMU)
:
BUSH, *et al.*, :
:
Respondents. :
:
———————————————————— x

## <u>STATUS REPORT</u>

Petitioners in the above-captioned action, by and through their undersigned counsel, respectfully submit this status report in response to the Court's July 11, 2008 Scheduling Order:

1.     The instant habeas petition was filed on behalf of 63 petitioners on December 13, 2005, just prior to the passage of the Detainee Treatment Act of 2005. After review, a large number of the petitioners in the instant case appear to be duplicates of petitioners on other habeas corpus petitions, or appear to have been transferred or released from Guantánamo.

2.     The following detainees named on the instant petition (1) are identified as specific detainees at Guantánamo Bay; (2) do not have duplicate habeas petitions pending before the District Court (except as noted); and (3) to our knowledge have not been transferred or released from Guantánamo Bay:

- **Mohammed Kameen**, an Afghan national, ISN 1045. Respondents concede the identification.

- **Saki Bacha**, an Afghan national, ISN 900. Respondents concede the identification.

- **Muhammed Saad Iqbal Madni**, a Pakistani national, ISN 743. Respondents concede the identification. Madni had a duplicate petition in Civil Action No. 06-CV-1674 (RMC), filed September 29, 2006 under the name Qari Saad Iqbal, which he withdrew voluntarily on February 12, 2007. Judge Collyer dismissed that case without prejudice on February 12, 2007.

- **Riad Nargeri**, a Tunisian national, ISN 510.

- **Houmad Warzly**, a Yemeni national, ISN 574. Respondents concede the identification.

- **Sabry Mohammed**, a Yemeni national, ISN 570. Respondents concede the identification.

- **Saleh**, a Yemeni national, ISN 78.

3.      Of the seven petitioners listed above in paragraph 2, two are currently the subject of charges before a military commission: Mohammed Jawad (ISN 900, listed as "Saki Bacha" on this petition) and Mohammed Kamin (ISN 1045, listed as "Mohammed Kameen" on this petition). Charges against Jawad, accusing him of throwing a hand grenade into a vehicle carrying U.S. and allied personnel in Afghanistan, were sworn on October 9, 2007, and referred for trial on January 30, 2008. It has been widely reported in the news media that Jawad was sixteen years old at the time of the alleged attack. Charges against Kamin, accusing him of providing material support to hostilities against U.S. and allied armed forces in Afghanistan, were sworn on March 12, 2008, and referred for trial on April 4, 2008.

4.      No factual return or classified CSRT record has been filed for any petitioner on this petition.

5.      There are no pending motions filed by petitioners in the instant case.

6.      There is no protective order in place in this case.

7.      Pursuant to the Detainee Treatment Act (DTA), petitioner Madni filed a Petition for Review of Combat Status Review Tribunal Determination with the U.S. Court of Appeals for the District of Columbia Circuit on April 3, 2007, No. 07-1083. There is a protective order in place in that case. Madni's DTA petition is still pending before the Court of Appeals.

8.      Petitioners Kameen, Bacha, Nargeri, Warzly, Mohammed, and Saleh (listed in Paragraph 2, above) hereby give notice to respondents and to the Court that they request thirty days prior notice of transfer pursuant to the Court's order of July 10, 2008 (Dkt. 52-2, Civil Action No. 08-mc-442).  (Petitioner Madni has already given such notice.  *See* Dkt. 63, Notice of Petitioners' Request for 30-Days Notice of Transfer (filed July 15, 2008).)

9.      As to all other individuals named on the instant petition, who are not specifically addressed in Paragraph 2, above, counsel do not object to dismissal of their claims without prejudice.

Dated:      New York, New York
            July 18, 2008

                                        Respectfully submitted,


                                        _____/s/ Shayana Kadidal_____
                                        Shayana D. Kadidal (D.C. Bar No. 454248)
                                        CENTER FOR CONSTITUTIONAL RIGHTS
                                        666 Broadway, 7th Floor
                                        New York, New York 10012
                                        Tel:  (212) 614-6438
                                        Fax:  (212) 614-6499

                                        *Counsel for Petitioners*

Richard L. Cys (D.C. Bar No. 87536)
Lisa B. Zycherman (D.C. Bar No. 495277)
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C. 20006-3402
Tel:  (202) 973-4217
Fax: (202) 973-4499
Email:  rickcys@dwt.com
Email:  lisazycherman@dwt.com

James P. Walsh (D.C. Bar No. 930115)
DAVIS WRIGHT TREMAINE, LLP
505 Montgomery Street
Suite 800
San Francisco, CA 94111-6533
Tel:  (415) 276-6500
Fax:  (415) 276-6599
Email:  budwalsh@dwt.com

*Counsel for Petitioner Muhammed Saad Iqbal Madni*

4

# EXHIBIT 4

**Petitioners Currently Detained at Guantanamo Bay Whose Habeas Cases Are Currently Dismissed On Jurisdictional Grounds**

| Civil Action No | Case Name | Judge | Current Case Status | Date of Dismissal Order | Reason For Dismissal |
|---|---|---|---|---|---|
| 05-CV-0569 | Salahi v. Bush | Robertson | Dismissed | 4/5/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-0748 | Aboassy v. Bush | Collyer | Dismissed | 5/30/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-0877 | Khiali-Gul v. Bush | Robertson | Dismissed | 4/5/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-1189 | Khalifh v. Bush | Robertson | Dismissed | 4/5/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-1505 | Al Hawary v. Bush | Collyer | Dismissed | 5/9/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-1506 | Shafiiq v. Bush | Collyer | Dismissed | 5/15/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-1555 | Idris v. Bush | Robertson | Dismissed | 4/5/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-1971 | Al-Qahtani v. Bush | Collyer | Dismissed | 5/8/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-2185 | Al-Mudafari v. Bush | Robertson | Dismissed | 4/5/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 05-CV-2387 | Al-Quhtani v. Bush | Collyer | Dismissed | 5/9/2007 | Jurisdiction -- D.C. Cir. Boumediene |
| 06-CV-1758 | Suliman v. Bush | Collyer | Dismissed | 5/30/2007 | Jurisdiction -- D.C. Cir. Boumediene |

# EXHIBIT 5

**EXHIBIT 5**

**Petitioners Who Are Approved For Transfer To
The Control Of Another Government For Release**

| Case Number | Petitioner's Name | Internment Serial Number (ISN) |
|---|---|---|
| 05-CV-1509 | Abdusabur Doe | 275 |
| 05-CV-1509 | Khalid Doe | 280 |
| 05-CV-1509 | Saabir Doe | 282 |
| 05-CV-1509 | Jalaal Doe | 285 |
| 05-CV-1509 | Abdusamad Doe | 295 |
| 05-CV-1509 | Hudhaifa Doe | 320 |
| 05-CV-2386 | Abdurahman LNU | 281 |
| 05-CV-2398 | Ali | 250 |
| 05-CV-2398 | Thabid | 289 |

# EXHIBIT 6

**EXHIBIT 6**

**Petitioners Who Are Approved For Transfer To The Control Of Another
Government For Possible Detention, Investigation, and/or Prosecution As
That Government Deems Appropriate Under Its Own Laws**

| Case Number | Petitioner's Name | Internment Serial Number (ISN) |
|---|---|---|
| 04-CV-1194 | Ali Yahya Mahdi | 167 |
| 04-CV-1254 | Adil Saeed El Haj Obaid | 165 |
| 04-CV-1254 | Mohamed Mohamed Hassan Odaini | 681 |
| 04-CV-2035 | Jarallah Al-Marri | 334 |
| 04-CV-2215 | Shaker Abdurraheem Aamer | 239 |
| 05-CV-270 | Adel Fattouh Aly Ahmed Algazzar | 369 |
| 05-CV-0280 | Suleiman Awadh Bin Aqil Al-Nahdi | 511 |
| 05-CV-0280 | Fahmi Salem Al-Assani | 554 |
| 05-CV-0359 | Rafiq Bin Bashir Bin Jallul Alhami | 892 |
| 05-CV-0359 | Mohammed Abdul Rahman | 894 |
| 05-CV-0748 | Mohammed Saeed Bin Salman | 251 |
| 05-CV-0994 | Kasimbekov Komoliddin Tohirjanovich | 675 |
| 05-CV-0998 | Arkan Mohammad Ghafil Al Karim | 653 |
| 05-CV-0999 | Asim Ben Thabit Al-Khalaqi | 152 |
| 05-CV-1220 | Abu Abdul Rauf Zalita | 709 |
| 05-CV-1347 | Farhi Saeed bin Mohammed | 311 |

| Case Number | Petitioner's Name | Internment Serial Number (ISN) |
|---|---|---|
| 05-CV-1353 | Motai Saib | 288 |
| 05-CV-1497 | Adil Bin Muhammad Al Wirghi | 502 |
| 05-CV-1504 | Nabil | 238 |
| 05-CV-1505 | Abbar Sufian Al Hawary | 1016 |
| 05-CV-1509 | Abdunasir Doe | 278 |
| 05-CV-1509 | Hammad Doe | 328 |
| 05-CV-1704 | Arkeen Doe | 103 |
| 05-CV-1704 | Sadar Doe | 277 |
| 05-CV-2349 | Ahmed Ben Bacha | 290 |
| 05-CV-2386 | Alkhadr Abdullah Al Yafie | 34 |
| 05-CV-2386 | Saif Ullah | 46 |
| 05-CV-2386 | Mohammed Al Palestini | 49 |
| 05-CV-2386 | Adil Bin Mabrouk | 148 |
| 05-CV-2386 | Jabbarov Oybek Jamolovich | 452 |
| 05-CV-2386 | Ali LNU | 455 |
| 05-CV-2386 | Maher El Falesteny | 519 |
| 05-CV-2386 | Adel LNU | 584 |
| 06-CV-0618 | Abdulli Feghoul | 292 |
| 06-CV-1766 | Fadhel Hussein Saleh Hentif | 259 |
| 07-CV-2337 | Ridah Bin Saleh Al Yazidi | 38 |

# EXHIBIT 7

**Data Responsive to Judge Hogan's 7/11/08 Scheduling Order:**

**"2.I. Identifies the cases in which an appeal or a petition for certiorari is pending."**

**Petitions for Certiorari**

We are not aware of any certiorari petitions pending before the Supreme Court.

**Appeals**

Below are the cases pending on appeal, with their District Court case numbers, and then their USCA (D.C. Circuit) case numbers. *Appeals brought by petitioners* are marked with *an asterisk*.

1) Consolidated appeals respecting authority to withhold classified information:

| Case Name | Case # in District Court | Case # in USCA (DC Cir.) |
|---|---|---|
| Al-Odah v. USA | 02-828 | 05-5117 |
| Rasul v. Gyurisko | 02-299 | 05-5118 |
| Habib v. Bush | 02-1130 | 05-5119 |
| Kurnaz v. Bush | 04-1135 | 05-5120 |
| O.K. v. Bush | 04-1136 | 05-5121 |
| Begg v. Bush | 04-1137 | 05-5122 |
| El-Banna v. Bush | 04-1144 | 05-5123 |
| Gherebi v. Bush | 04-1164 | 05-5124 |
| Anam v. Bush | 04-1194 | 05-5125 |
| Almurbati v. Bush | 04-1227 | 05-5126 |
| Abdah v. Bush | 04-1254 | 05-5127 |

2) Consolidated appeals respecting conditions of confinement, stay of habeas proceedings, and habeas protective order:[1]

| *Paracha v. Bush | 04-2022 | 05-5194 |
|---|---|---|
| *Paracha v. Bush | 04-2022 | 05-5333 |
| *Paracha v. Bush | 04-2022 | 05-5211 |

---

[1] Petitioner contends that the three listed appeals are moot.

3) First group of consolidated appeals respecting 30-day notice of transfer orders:

| Kiyemba v. Bush | 05-1509 | 05-5487 |
| *Kiyemba v. Bush | 05-1509 | 05-5488 |
| Mamet v. Bush | 05-1602 | 05-5489 |
| *Mamet v. Bush | 05-1602 | 05-5490 |
| Alladeen v. Bush | 05-833 | 05-5491 |
| Zakirjan v. Bush | 05-2053 | 06-5042 |
| Zakirjan v. Bush | 05-2053 | 06-5234 |

4) Second group of consolidated appeals respecting 30-day notice of transfer orders:

| Abdah v. Bush | 04-1254 | 05-5224 |
| Abdullah v. Bush | 05-23 | 05-5225 |
| Al-Wazan v. Bush | 05-329 | 05-5227 |
| Adem v. Bush | 05-723 | 05-5228 |
| Al Daini v. Bush | 05-634 | 05-5229 |
| Al Hela v. Bush | 05-1048 | 05-5230 |
| Al Joudi v. Bush | 05-301 | 05-5231 |
| Al Mohammed v. Bush | 05-247 | 05-5232 |
| Al-Adahi v. Bush | 05-280 | 05-5235 |
| Al-Marri v. Bush | 04-2035 | 05-5236 |
| Al-Oshan v. Bush | 05-520 | 05-5237 |
| Anam v. Bush | 04-1194 | 05-5238 |
| Salahi v. Bush | 05-569 | 05-5239 |
| Aziz v. Bush | 05-492 | 05-5242 |
| Ameziane v. Bush | 05-392 | 05-5243 |
| Tumani v. Bush | 05-526 | 05-5244 |

2

| El-Mashad v. Bush | 05-270 | 05-5246 |
| El-Banna v. Bush | 04-1144 | 05-5247 |
| Alhami v. Bush | 05-359 | 05-5248 |
| Deghayes v. Bush | 04-2215 | 05-5337 |
| Slahi v. Bush | 05-881 | 05-5338 |
| Chaman v. Bush | 05-887 | 05-5339 |
| Zalita v. Bush | 05-1220 | 05-5353 |
| Al Karim v. Bush | 05-998 | 05-5374 |
| El-Marqodi v. Bush | 05-1649 | 05-5390 |
| Hatim v. Bush | 05-1429 | 05-5398 |
| Sohail v. Bush | 05-993 | 05-5478 |
| Abdulzaher v. Bush | 05-1236 | 05-5479 |
| Almerfedi v. Bush | 05-1645 | 05-5484 |
| Khalif v. Bush | 05-1189 | 05-5486 |
| Idris v. Bush | 05-1555 | 06-5037 |
| Sameur v. Bush | 05-1806 | 06-5039 |
| Alkhemisi v. Bush | 05-1983 | 06-5041 |
| Al-Mudafari v. Bush | 05-2185 | 06-5043 |
| Khiali-Gul v. Bush | 05-877 | 06-5062 |
| Al Bahooth v. Bush | 05-1666 | 06-5064 |
| Al-Mithali v. Bush | 05-2186 | 06-5065 |
| Kahn v. Bush | 05-1001 | 06-5067 |
| Awad v. Bush | 05-2379 | 06-5094 |

5) Individual appeals respecting 30-day notice of transfer orders:

| *Al Ginco v. Bush | 05-1310 | 06-5191 |
| Paracha v. Bush | 04-2022 | 05-5334 |
| Rahmattullah v. Bush | 05-878 | 07-5091 |
| *Zalita v. Bush | 05-1220 | 07-5129 |

3

| Al-Zarnouqi v. Bush | 06-1767 | 07-5148 |
| Ghanem v. Bush | 05-1638 | 07-5303 |
| Saleh v. Bush | 06-1765 | 07-5323 |
| Hentif v. Bush | 06-1766 | 07-5324 |
| Alhami v. Bush | 05-359 | 07-5400 |
| Yazidi v. Bush | 07-2337 | 08-5051 |
| Shubati v. Bush | 07-2338 | 08-5052 |
| Sanani v. Vargo | 05-2386 | 08-5149 |

6) Consolidated appeals respecting various orders in district court habeas actions:

| *Razak Ali v. Bush (denial of motion to compel factual returns and denial of motions related to access to counsel issues) | 05-2386 | 07-5040 |
| *Sanani v. Bush (denial of motion for order requiring 30-day notice of transfer) | 05-2386 | 07-5043 |
| *Al-Harbi v. Bush (denial of motion to compel factual return) | 05-2479 | 07-5052 |

7) Individual appeals respecting denial of access to medical records or conditions:

| *Al Ghizzawi v. Bush | 05-2378 | 06-5394 |
| *Al-Ghizzawi v. Bush | 05-2378 | 08-5136 |

8) Individual appeal respecting use of "filter team" in suicide investigation:

| *Hamad v. Bush | 05-1009 | 06-5331 |

9) Individual appeal respecting dismissal of habeas action:

| *Bukhari v. Bush | 05-1241 | 07-5201 |

4